## GARRETT v. BELMONT LAND CO.

*(Nashville.* February 26, 1895.)

1. ADVERSE POSSESSION. *Of town lots.*

There must be actual inclosure, whenever the property is susceptible of such inclosure, in order to make out adverse possession of unoccupied town lots. Mere payment of taxes thereon will not suffice. (*Post, pp. 464–468.*)

Cases cited: Pullen v. Hopkins, 1 Lea, 741; Hicks v. Trederick, 9 Lea, 492; West v. Lanier, 9 Hum., 762; Creech v. Jones, 5 Sneed, 631; Copeland v. Murphy, 2 Cold., 64; 4 Ired., 310; 74 Iowa, 294; 39 Ill., 546; 1 Wharton, 303; 12 Fed. Rep., 820; 44 Minn., 135.

2. CORPORATIONS. *Deeds of.*

The deed of a private corporation is ineffectual at common law to pass the legal title to real estate which recites no authority for its execution, and is signed by an individual describing himself as president of the corporation, without affixing the corporate seal, and which purports to have been acknowledged by him personally, and not by the corporation through him. (*Post, pp. 466–479.*)

Cases cited and approved: Binkley v. Bethel, 9 Heis., 786; 33 Am. Dec., 193; 19 Am. St. R., 761; 45 Fed. Rep., 148; 32 Cal., 639; 2 Col., 150; 2 Cush., 337; 8 Conn., 191; 7 Mass., 19; 16 Mass.. 42; 136 Ill., 289; 40 Mo. App. R., 360; 131 Pa. St., 393; 43 N. H., 343; 97 N. C., 300; 88 Ky., 272; 21 Am. St. R., 339; 23 Am. Dec., 746, note.

3. SAME. *Same.*

And such deed is not effectual under § 2819 (M. & V.) Code, providing that conveyances of real estate executed by an agent or attorney may be signed "by such agent or attorney for his principal, * * * if the instrument, on its face, shows the character in which it is intended to be executed." (*Post, pp. 472, 473.*)

Code construed: § 2819 (M. & V.); § 2012 (T. & S.).

Cases cited: Cocke v. Dickens, 4 Yer., 34; Fitzpatrick v. Fain, 3 Cold., 17.

Garrett *v.* Belmont Land Co.

4. SAME. *Same. Abolition of private seals.*

Our statute declaring that "the use of private seals in written contracts, except the seals of corporations, is abolished," did not operate to dispense with the common law rule requiring the deeds of corporations to be executed under seal. (*Post, pp. 475–479.*)

Code construed: § 2478 (M. & V.; § 1804 (T. & S.)

Cases cited: Roper *v.* Stone, Cooke, 499; Shelton *v.* Bruce, 9 Yer., 26; Read *v.* Wheeler, 2 Yer., 55; Brown *v.* Parks, 8 Hum., 297; Nivens *v.* Merrick, 1 Tenn., 314; Coleman *v.* Sanderlin, 5 Hum., 563; Anderson *v.* Settle, 5 Sneed, 203; Thompson *v.* Thompson, 2 Head, 407; Evans *v.* Pigg, 3 Cold., 397; Simpson *v.* Moore, 6 Bax., 373; Nunnelly *v.* Dougherty, 1 Yer., 27; Turbeville *v.* Ryan, 1 Hum., 113.

*Question reserved:* Whether corporations organized under the general incorporation Act of 1875 may convey their real estate without affixing corporate seal to deed.

5. EJECTMENT. *Plaintiff must show legal title.*

Under an ejectment bill averring a legal title, the complainant cannot recover upon proof of an equitable title. (*Post, p. 479.*)

Cases cited and approved: Langford *v.* Love, 3 Sneed, 308; Rogers *v.* Cawood, 1 Swan, 146; Campbell *v.* Campbell, 3 Head, 325; Walker *v.* Fox, 85 Tenn., 160; Evans *v.* Belmont Land Co., 92 Tenn., 348.

6. EVIDENCE. *Contemporaneous transaction.*

The recitals of a record constituting a contemporaneous transaction, explanatory of the matter in litigation, may be admitted as evidence against litigants who were not parties to the suit in which the recitals were made. (*Post, pp. 480, 481.*)

---

FROM DAVIDSON.

---

Appeal from Chancery Court of Davidson County. ANDREW ALLISON, Ch.

A. E. GARRETT, E. H. EAST, VERTREES & VER-TREES for Complainants.

J. C. BRADFORD, BAXTER & HUTCHESON, J. H. ACKLEN for Defendants.

WILKES, J.  This is an ejectment suit, brought by A. E. Garrett and J. A. Hayes, Jr., to recover lots Nos. 23 and 41 in what is styled the O. B. Hayes plan, a suburb of Nashville.

The Belmont Land Company claims, and is in possession of, lot No. 41, and defendant, Valentino, claims, and is in possession of, No. 23.  Upon the hearing, the Chancellor gave judgment for the complainants for the lots, and defendants have appealed and assigned errors.

Both parties trace their titles to a common source, Joel A. Hayes, Sr., who was the father of complainant, J. A. Hayes, Jr., the father-in-law of complainant, Garrett, and the brother of Mrs. Adelicia Cheatham, under whom the defendants derived their title.

Complainants' title is as follows:  On December 5, 1873, the Second National Bank of Nashville recovered a judgment before Justice of the Peace James Everett, against one Henry M. Hayes, for $370 and costs.  Joel A. Hayes, Sr., the brother of H. M. Hayes, became stayor on the judgment. After the stay expired, and on August 6, 1874, the Justice issued an execution on said judgment, which came to the hands of Constable W. C. Shaw, and was levied by him on lots Nos. 11, 20, 23, and 41,

in O. B. Hayes' plan, as the property of J. A. Hayes, the stayor. After the levy of the *fi. fa.*, the papers were returned to the Law Court of Davidson County for the condemnation of the land. The order of condemnation was entered by that Court January 29, 1875. *Venditioni exponas* issued on March 2, 1875, and the lots were sold by the Sheriff on May 1, 1875, the Second National Bank becoming the purchaser, at the price of $107.42 for each lot. Afterwards, on July 7, 1877, the Sheriff executed to the Second National Bank a deed to said four lots.

On October 13, 1877, James McLaughlin, president of the Second National Bank, executed and delivered to A. E. Garrett and J. A. Hayes, Jr., a deed to said lots. It is insisted this deed is invalid, because, as signed, it was not the deed of the bank, but simply that of James McLaughlin, and because it was not executed under the seal of the bank. But it is insisted, if the deed shall be held valid, that Garrett and Hayes, Jr., held title to the lots not for themselves, but for the use and benefit of Joel A. Hayes, Sr., having in fact redeemed or repurchased them for him, and having afterwards been repaid the amounts advanced by them to regain the lots.

It is assigned as error that the Chancellor should have held:

1. That defendants, and those under whom they claimed, had been in adverse possession of said lots,

under color of title, for more than seven years next preceding the filing of the original bill.

2. That the deed of James McLaughlin, president of the Second National Bank, under which complainants claim, was void, and conveyed to them no title in said property, or, at most, vested in them only an equity which was insufficient to entitle them to recover.

3. That the alleged purchase of the lots by complainants from the Second National Bank was, in law and in fact, a redemption for J. A. Hayes, Sr.

Appellants' chain of title is as follows: On July 12, 1875, Mrs. Adelicia Cheatham, a sister of Joel A. Hayes, Sr., recovered a judgment in the Circuit Court of Davidson County against Joel A. Hayes, Sr., upon which execution issued, and was levied September 4, 1875, on these two lots, 23 and 41, as well as lot No. 11, and other real estate not now in controversy, and on November 26, 1875, the lots were sold by the Sheriff, and lots Nos. 23 and 41 were bought by Mrs. Cheatham, and the Sheriff made a deed to her February 15, 1881. She conveyed the lots January 11, 1887, with other lots, to Lewis T. Baxter, for $49,000; and on October 17, 1889, Baxter and wife conveyed lot No. 23 to E. C. McDowell, who afterwards sold the same to defendant, J. L. Valentino. March 17, 1890, Baxter conveyed lot No. 41 to the Belmont Land Company. It is claimed that Mrs. Cheatham paid taxes on the lots from the time she bought them, in 1875, and claimed

them as her own, until she sold them, January 11, 1887. They were not inclosed, but lay in an open common, which had been subdivided into a large number of lots, known as the "O. B. Hayes' Plan." These lots were owned by different parties, and were mostly vacant and unimproved. No roads or highways were built through them until, in 1888, the defendant company opened what is called Belmont Avenue. Until this was done, the lots were inaccessible, and their value was speculative and dependent on the growth of the city. On April 23, 1883, Mrs. Cheatham, by deed duly registered, dedicated to the public, for use as a highway, ten feet off of each of these lots fronting on Belmont Avenue, but the lots are not mentioned specifically by numbers, and the deed was not registered until after the bill in this case was filed; and in 1889 the Belmont Land Company graded and put a drain pipe through No. 41. In the meantime, complainants paid no taxes upon the lots, nor exercised any public acts of ownership over them, until about October 23, 1890, when this bill was filed. This is virtually all the evidence in regard to possession.

Defendants plead and rely on the statute of limitations, coupled with this adverse possession, which, they insist, was all that the lots were capable of, and they cite and rely upon the following cases: *West* v. *Lanier*, 9 Hum., 762; *Creech* v. *Jones*, 5 Sneed, 631; *Copeland* v. *Murphy*, 2 Cold., 64; *Pullen* v. *Hopkins*, 1 Lea, 744; *Bynum* v. *Carter*,

4 Iredell, 310; *Green* v. *Haman,* 4 Dev. Law, 158, 161; *Brick* v. *Holt,* 74 Iowa, 294; *Hatch* v. *Bigelow,* 39 Ills., 546; *Krider* v. *Lafferty,* 1 Wharton, 303; *Bamen* v. *Ward,* 12 Fed. Rep., 820; *Costello* v. *Edson,* 44 Minn., 135.

In these several cases it was held that digging sand, digging ore, the annual making of turpentine, running a plowed furrow around a tract of prairie land, laying down sidewalks, and placing agent's sign board on a town lot, growing and cutting willows for basket making, cutting underbrush, grubbing, and paying taxes on village lots, under the facts of the respective cases, constituted adverse possession, without actual inclosure or residence upon the premises.

In the answer filed by the defendants, they state that "said blocks or lots of land are what is known as fine blue grass lands, and are suitable for cultivation. They are located in the suburbs of the city of Nashville, and are entirely too small for agricultural purposes. It is true no person has attempted to build a house on either of them, or to inclose any part of either of them, until recently, when each lot was inclosed. Said blocks or lots are like a great many other lots in the suburbs of Nashville; they have been left uninclosed and unimproved until recently, awaiting a purchaser who desired to build. The only acts of ownership of which they were susceptible in their uninclosed condition was the payment of taxes upon them, which

30—10 P

have all been paid by Mrs. Cheatham or those claiming under her since her purchase."

It is proper to remark in this connection that taxes were not paid upon the lots by either party by specific description, and none have at any time been paid or claimed to have been paid by complainants, but defendants claim that Mrs. Cheatham paid taxes upon these lots along with other property and lots owned by her in the same locality after her purchase until the sale.

We are of opinion that neither party has had such actual adverse possession of the lots as would ripen their claims into perfect titles by virtue of such possession, and that the property has not had such inclosures as it was susceptible of. They have recently been inclosed, and the proof shows that, before the war, they were inclosed by fences, and the cases cited do not apply, even if it were conceded that they are good law in Tennessee, which it is not necessary now to determine. There must be actual inclosure, whenever the property is susceptible of such inclosure, in order to make out a case of adverse possession of town lots. *Pullen* v. *Hopkins*, 1 Lea, 741; *Hicks* v. *Trederick*, 9 Lea, 492; Newell on Ejectment, p. 728, Sec. 41.

It is insisted that the deed executed to Garrett and Hayes was invalid to convey to them a legal title to said lot, and, at most, could only vest them with an equity. The objection to the deed is as to the mode in which it was signed and acknowl-

edged, and the fact that the seal of the bank was not attached or affixed to the instrument. The deed recites on its face that "the consideration ($700) was paid by the grantors to the Second National Bank," and that "the bank conveys, remises and releases," etc., and that "said Second National Bank covenants," etc., and "said bank will warrant and defend against all persons claiming under it." It concludes: "In testimony whereof, the Second National Bank of Nashville hath hereunto set its hand, by its president, James McLaughlin, this thirteenth November, 1877, at Nashville, Tenn.

"(Signed)      JAMES MCLAUGHLIN,
            "*President Second National Bank.*"

The acknowledgment was taken before the Clerk of the County Court, and recites that the within named James McLaughlin, president of the Second National Bank, appeared, etc., and acknowledged that he executed the annexed instrument for the purposes therein contained. The seal of the bank was not impressed upon or affixed to the instrument. It appears in proof that the bank had a seal; that it was not its custom to affix it to deeds or other instruments, except its stock certificates. It is insisted that a deed thus executed is not the deed of the Second National Bank as a corporation, because not properly signed and not sealed, and the following authorities are cited and relied on:

In *Love* v. *S. N. L. W. & M. Co.*, 32 Cal., 639, the parties in the mortgage were described as "The

Sierra Nevada Lake Water & Mining Company, a corporation, by their trustees, Josiah Bates and Samuel Atchison, of the first part, and Jos. Love, John Ridgway, etc., of the second part." The mortgage was signed by the said Josiah Bates and Samuel Atchison, and sealed with their seals. The acknowledgment of the mortgage was to the effect that Bates and Atchison were personally known to the Notary as trustees of said corporation, and that they personally appeared and acknowledged, each for himself, that he executed the instrument for the uses and purposes therein mentioned, "as the free act and deed of said Sierra Nevada Lake Water & Mining Company." Bates was president of the company, and Bates and Atchison were a majority of the trustees. The mortgage was held to be void on two grounds: (1) It was not executed in the name of the corporation, and (2) the corporate seal was not affixed.

In *Richardson* v. *Scott River W. & Mining Co.*, 2 Cal., 150, a mortgage was made in connection with a bond to secure a debt of a corporation styled the "Scott River Water & Mining Company," and named as parties of the first part (grantors), W. P. Pool, C. W. Tezer, G. T. Terry, and J. Reid, "president, directors, and members of the Scott River Water & Mining Company," and concludes as follows: "In witness whereof, the said parties of the first part hereunto set their hands and affix their seals," followed by the signatures of the four

persons above named, with a seal or scrawl affixed to each. It was held that this conveyance was not sealed with the corporate seal, and was, therefore, inoperative as the foundation of any right or claim to the corporate property which it purported to convey.

In *Brinley* v. *Mann*, 2 Cush., 337, a deed from the New England Silk Company, a corporation, was set up as a muniment of title. The formal parts of one of the deeds was as follows: "Know all men by these presents, that the New England Silk Company, a corporation legally established by Christopher Colt, Jr., in behalf of said corporation, and as their treasurer, of Dedham, etc., in consideration, etc., do hereby give, grant, sell, and convey, etc. In witness whereof, I, the said Christopher Colt, Jr., in behalf of said corporation, and as their treasurer, have hereunto set my hand and seal, this," etc. Signed and sealed: "Christopher Colt, Jr., treasurer of New England Silk Company." The certificate of acknowledgment stated, that "Christopher Colt, Jr., treasurer, etc., acknowledged the above instrument to be his act and deed."

In the other deed, Christopher Colt, Jr., described himself, in the concluding recital, as "treasurer of the New England Silk Company, and duly authorized for that purpose," and in the certificate of acknowledgment it is stated that, "in his said capacity," he acknowledged the instrument to be his act and deed. The case was an action to try title. The defendant

claimed by intermediate conveyances under the deed of the New England Silk Company. The plaintiff's title was based on a judgment, and the levy of an execution on the land as the property of the New England Silk Company. The levy was made after the execution of the deeds.

The Court said: "On examining the deeds to Colt, we are of opinion they conveyed him no title. * * * Both of these deeds were executed by C. Colt, Jr., in his own name, were sealed with his seal, and were acknowledged by him as his acts and deeds. In one of them, it is true, he declared that he acted in behalf of the company, and as their treasurer, and in the other he declared himself to be their treasurer, and to be duly authorized for the purpose of executing it. But this was not enough. He should have executed the deeds in the name of the company. He should, also, have affixed to them the seal of the company, and have acknowledged them to be the deeds of the company." Citing 1 Crabb on Real Property, Sec. 703, 705; 4 Kent's Com. (3d Ed.), 451; *Stinchfield* v. *Sittle*, 1 Greenl., 1231; *Savings Bank* v. *Davis*, 8 Conn., 191.

In *Flower* v. *Shearer*, 7 Mass., 19, Parsons, Ch. J., says: "It is not enough for the attorney, in the form of the conveyance, to declare that he does it as attorney; for he being in the place of the principal, it must be the act and deed of the principal."

In *Elwell* v. *Shaw*, 16 Mass., 42, the deed was

executed by an attorney in fact, in his own name, and not in the name of his principal, reciting his power and authority. The Court held the deed to be insufficient. It was said that "it was important that the forms respecting the transfer of real estate should be strictly observed. * * * A seal, although it may seem an unmeaning ceremony, and not at all necessary to explain the intention of the contracting parties, is, nevertheless, an essential part of the deed."

It was further said that the authority of Coombes' case is not at all shaken by modern decisions. In Coombes' case, 19 Co., the rule is very explicitly stated: "When anyone has authority as attorney to do any act, he ought to do it in his name who gives the authority; for he appoints the attorney to be in his place, and to represent his person; and, therefore, the attorney cannot do it in his own name, nor as his proper act, but in the name, and as the act, of him who gives the authority."

In *Danville Seminary* v. *Mott*, 136 Ill., 289, 394, real estate, the property of the Danville Seminary, was conveyed by the "Board of Trustees of the Danville Seminary," and the seal of the latter corporation was not affixed to the deed. The Court says: "A deed of conveyance by a corporation must be executed in the corporate name and under the corporate seal. A corporation, like an individual, may adopt any seal which is convenient to the occasion; it must, however, be shown to have been

so adopted, and it must be affixed as the seal of the corporation, and by an officer or agent duly authorized." See also *So. Mo. Land Co.* v. *Jeffries*, 40 Mo. App. R., 360; *McElroy* v. *Nucleus Asso.*, 131 Pa. St., 393; *Tenney* v. *East Warren Lumber Co.*, 43 N. H., 343.

A deed purporting to be executed by a corporation to a trustee, which bears the signature and seal of the president, with the suffix "President of D. R. Co.," is not the deed of the corporation, but the personal act of the president. *Clayton* v. *Cagle*, 97 N. C., 300. See, also, *McKensey* v. *Edwards*, 88 Ky., 272; 21 Am. State Rep., 339, note. "When the conveyance describes the grantors as a corporation, but is executed by the president, under his own name and seal, it is not the deed of the corporation." *Leggett* v. *N. J. M. & B. Co.*, 23 Am. Dec., 746, note. See, also, 4 Am. & Eng. Ency. of Law, 240; 3 Wash. Real Property, 294, Secs. 573, 574; 1 Am. Leading Cases, 577, and cases cited.

It will be noticed in this case that the deed does not purport to have been authorized by any order of the board of directors, and the authority of the president to execute the deed does not appear, unless it be assumed that, as a matter of law, he had such authority. If the seal had been affixed, such recital would have been unnecessary, and the authority would have been present.

The Code (M. & V.), § 2819, provides that

instruments relating to real or personal property executed by an agent or attorney may be signed by such agent or attorney for his principal, or by writing the name of the principal by him as agent or attorney, or by simply writing the principal's name, if the instrument, on its face, shows the character in which it is intended to be executed.

It is insisted that the words, "President Second National Bank," are only descriptive of the person (*Cocke* v. *Dickens*, 4 Yer., 34; *Fitzpatrick* v. *Fain*, 3 Cold., 17), and, therefore, the signature is no more than the individual signature of James McLaughlin; and, not purporting on its face to be done by order of the bank directors, and not being under seal of the bank, it was only the act of James McLaughlin as an individual. It is insisted the signature should have been: "James McLaughlin, President, for the Second National Bank;" or "The Second National Bank, by James McLaughlin, President;" or, "The Second National Bank." See M. & V. Code, § 2819.

This will be further considered and disposed of in connection with the question of the necessity for a seal to a conveyance executed by a corporation at common law and in Tennessee. Prior to the adoption of the Code of 1858, the seal of the grantor was necessary to the validity of any deed made by an individual or a corporation. The use of seals by individuals arose out of necessity, as, in former days, many persons of extensive estates were too

Garrett v. Belmont Land Co.

illiterate to make their manual signatures. Its adoption and use by corporations, however, arose out of their nature and constitution, being invisible, intangible bodies, composed of an aggregation of individuals, who must speak, at least in weighty matters, through a common seal. It was accordingly held that the affixing of the seal, and that alone, united the several assents of the individuals who composed the corporation, and gave expression to the act as the assent of the whole, and that a corporation could enter into no contract of importance except under seal. The tendency of modern legislation and the trend of more recent decisions is toward the abolition of the strict rules formerly prevailing as to sealed instruments, and in many States statutes have been passed doing away, in whole or in part, with the distinction between sealed and unsealed instruments, and in most of the States the use of the seal is now regulated by statute. There is a difference kept up, however, in many of the States between the use of seals by corporations and by individuals. While it is laid down broadly that corporations may enter into contracts to the same extent as individuals without using a seal, this clearly has reference to other contracts than the conveyance of lands, and none of the cases to which we have been cited hold that the use of a seal is not required in conveyances of land. See Taylor on Corporations, Sec. 248; Morawetz on Corporations (2d Ed.), Sec. 338; Waterman on Corporations, Secs

Garrett *v.* Belmont Land Co.

89, 90; *Mus. W. Co.* v. *Mus. L. Co.*, 37 Am. & Eng. Corp. Cases, 119; *Gottfield* v. *Miller*, 104 U. S., 527; *Merrick* v. *Burlington Plank Road Co.*, 11 Iowa, 74–76; *Cary Holliday Lumber Co.* v. *Cain et al.*, 13 Sou. Rep., 239.

These conveyances did not involve conveyances of real estate, and none of the citations are authority for the proposition that a corporation can execute a deed without using a seal. But we think the contrary is held, more or less directly, in the following, as well as other authorities: Spelling on Private Corporations, Sec. 195; Beach on Private Corporations, 376, and Sec. 742 as to mortgages; Jones on Mortgages, Sec. 128; 1 Waterman on Corporations, Sec. 95, p. 303; Boone on Corporations, Sec. 54; 3 Washburn on Real Estate, p. 288, Sec. 7; *Leggett* v. *N. J. M. & B. Co.*, 23 Am. Dec., 746, note; 4 Am. & Eng. Ency. of Law, p. 240; 2 Am. & Eng. Ency. of Law, p. 910; *Osborne* v. *Tunis*, 23 N. J. L., 633, 658; *Duke* v. *Markam*, 18 Am. St. Rep., 889, note; *Miller Ditch Co.* v. *Zellenbach*, 37 Cal., 543; *Hutchins* v. *Byrnes*, 9 Gray, 367; *Flint* v. *Clinton Co.*, 12 N. H., 430; *Tenney* v. *East Warren Lumber Co.*, 43 N. H., 343; *Hutch* v. *Barr*, 1 Ohio, 390; *Savings Bank* v. *Davis*, 8 Conn., 191; *Isham* v. *Bennington Iron Co.*, 19 Vt., 230; *Zoller* v. *Ide*, 1 Neb., 439; *Brierly* v. *Mann*, 2 Cush., 337; *Koehler* v. *Iron Co.*, 2 Black, 715, 721.

By the Code of Tennessee of 1858, it is provided (M. & V., § 2478) that "the use of private seals in

written contracts, except the seals of corporations, is abolished, and the addition of a private seal to an instrument of writing hereafter made shall not affect its character in any respect whatever.''

Did the Act change the rule as to conveyances by corporations in Tennessee so as to dispense with the necessity of a seal? There is certainly nothing in the Act to so indicate, but the fact that seals of corporations are excepted by its provisions is an indication that the seal was to be used by corporations after the Act was passed, as had been done before its passage, at least in some cases. Statutes similar to this have been passed in Alabama, Arkansas, Delaware, Florida, Kentucky, Iowa, Kansas, Maryland, Minnesota, Mississippi, Nebraska, North Carolina, Ohio, Indiana, Texas, Pennsylvania, West Virginia. Nevertheless, in most of these States corporations are still required to use their seals in making conveyances, as in Ohio, Indiana, Kentucky, Maryland, Minnesota, Mississippi, Pennsylvania, Nebraska, Kansas, and Texas. See 3 Wash. on Real Prop., p. 288. And not only must the deed be sealed, but the seal must be affixed by some one authorized to affix it. *Idem*, p. 289.

The conveyance of real estate is one of the most solemn and important acts a corporation is called upon to perform, and if the seal is required for any purpose, it is difficult to conceive of any other act for which its use is more necessary. If it was intended to abolish the use of seals by corporations

altogether, why was the saving or excepting clause inserted in the Act? And if the seal is to be required in any case, in what case is it more important than in a conveyance of real estate, either absolutely or under mortgage?

Prior to the Code, the use of an individual or private seal worked various effects, as for example: If not under seal, it was necessary to aver and prove a consideration in all contracts, oral or written, except in cases of bills and notes. *Roper* v. *Stone*, Cooke, 499; *Shelton* v. *Bruce*, 9 Yer., 26; *Read* v. *Wheeler*, 2 Yer., 55; *Brown* v. *Parks*, 8 Hum., 297. The consideration of a sealed instrument could not be inquired into in an action of law. *Nivens* v. *Merrick*, 1 Tenn., 314; *Coleman* v. *Sanderlin*, 5 Hum., 563. And the statute of limitations was different in cases of sealed and unsealed instruments. *Anderson* v. *Settle*, 5 Sneed, 203; *Thompson* v. *Thompson*, 2 Head, 407, and other cases. A release was required to be under seal. *Evans* v. *Pigg*, 3 Cold., 397, 398; *Simpson* v. *Moore*, 6 Bax., 373. A sealed contract merged one not under seal. *Nunnelly* v. *Dunn*, 1 Yer., 31; Bishop on Contracts, Sec., 31. A person could not bind another by seal unless authorized by seal. *Nunnelly* v. *Dougherty*, 1 Yer., 27; *Turbeville* v. *Ryan*, 1 Hum., 113. Creditors under sealed instruments had certain preferences at common law in estates of deceased persons. Anson on Contracts, p. 48.

The application of this section of the Code, No.

2478, finds ample scope in altering these rules derived from the common law in regard to contracts and conveyances by individuals, without extending it to the deeds and other solemn instruments to be executed by corporations, and, in view of the saving clause excepting corporation seals, we cannot infer that the Legislature intended to abolish the use and necessity for corporate seals altogether.

We are of opinion that this Act, 2478 M. & V. Code, does not change the rule of the common law requiring corporations to use their seals in all conveyances of real estate, and a conveyance not under seal, made by a corporation, does not vest a legal title in the grantee, except, it may be, cases of corporations created under the Act of 1875, and which have no common seal, in which case that Act provides that, in such corporations, having no common seal, the signing of the name of the corporation, by any duly authorized agent, shall be legal and binding. See Act 1875, Ch. 142, Sec. 5; M. & V., § 1704.

The corporation now in question was not created under the Act of 1875, but under the Acts of Congress providing for national banks, and we are not called upon to say whether, under this Act of 1875, a corporation may convey without seal in any case. That question is in no way involved in this case. We are of opinion that the deed in question in this case was not properly signed nor sealed, and hence did not vest the legal title to the lots

in controversy in complainants, but only operated to create in them an equitable interest and title. Pomeroy's Eq. Juris., Sec. 418; Devlin on Deeds, Sec. 246; *Beardsley* v. *Knight*, 33 Am. Dec., 193; *Frost* v. *Wolf*, 19 Am. State Rep., 761, 764; *Allis* v. *Jones*, 45 Fed. Rep., 148; *Binkly* v. *Bethel*, 9 Heis., 786.

Complainants base their right of recovery in this case upon the claim that they have a legal title to the lots, and they repudiate the idea that they have only an equitable interest or estate. This being so, to entitle them to recover, they must show a perfect legal title. And this is true, whether their suit is brought in a Court of equity or law, and they cannot recover upon any equitable title that may appear from the proof. Code of Tenn. (M. & V.), § 3953; *Langford* v. *Love*, 3 Sneed, 308; *Rogers* v. *Cawood*, 1 Swan, 146; *Campbell* v. *Campbell*, 3 Head, 325; *Walker* v. *Fox*, 1 Pick., 160; *Evans* v. *Belmont Land Co.*, 8 Pick., 348.

It is useless to pass upon the validity of defendant's title, as complainants must recover, if at all, upon the strength of their own title, and not upon any supposed or real weakness in their adversary's title.

It is next insisted that the lots in controversy were redeemed or repurchased by complainants for Joel A. Hayes, Sr., and that complainants have been repaid the amounts advanced by them for that purpose, and have now no real, beneficial interest in

the lots. Complainants testify that such is not the case, but it is contended by defendants that entries of record, contemporaneous with the transactions, sustain this insistence. It appears that, after these lots were recovered by complainants, they conveyed two of them to Mrs. Emily Hayes, widow of O. B. Hayes, in satisfaction of a debt due the estate of her husband. This deed to Mrs. Hayes was executed by complainants and Joel A. Hayes, Sr., and recites on its face that the bank has permitted A. E. Garrett and Joel A. Hayes, Jr., to repurchase said lots for $700 cash. Very soon after this, a decree was entered in a foreclosure suit, brought by Mrs. O. B. Hayes, to collect her debt from Joel A. Hayes, Sr., and, in that decree, it was recited that "it appeared to the Court that Joel A. Hayes, Sr., by his son, Joel A. Hayes, Jr., and his son-in-law, A. E. Garrett, had obtained the title to said lots from the bank," etc. It is said that complainants were not parties to that suit, and are not bound by the recitals in that decree, and that it was incompetent as evidence against them.

While it is true the complainants were not parties of record to that suit, we think it was competent to introduce the record as a contemporaneous transaction, showing how all the parties, and especially Joel A. Hayes, Sr., regarded the transaction with the bank. The language of the deed from complainants to Mrs. Hayes supports the contention of defendants that the lots were being regained from

the bank in the interest of Joel A. Hayes, Sr., and
this is further strengthened by the testimony of
Gen. G. P. Thruston, the attorney for the bank,
and by other facts in the record. The language
used in the deed that the bank has permitted com-
plainants to repurchase said lots, is inconsistent with
the idea that the bank was selling the lots to com-
plainants as an independent transaction, and consist-
ent with the idea that they were being regained in
the interest of the debtor, and that the permission
to repurchase was a concession to him on the part
of the bank. The deed from the bank is, more-
over, a quitclaim, and not a warranty deed, as
would, no doubt, have been demanded by an inde-
pendent purchaser.

On the same day this deed was made to Mrs.
Emily Hayes, and the same day the deed was made
to complainants by Mr. McLaughlin, Joel A. Hayes,
Sr., executed to complainants a mortgage to secure
them the sum of $700, which they had advanced for
him, and other amounts, and had the same recorded.
There can be no doubt that this $700 is the same
$700 advanced to the bank to regain the lots. Com-
plainant Garrett states that this mortgage was exe-
cuted without his knowledge, and sent to him, after
registration, by mail; whereupon, he canceled it, and
returned it satisfied. It stood, however, on the
Register's books unsatisfied and as a subsisting mort-
gage until July 1, 1883, when Joel A. Hayes, Jr.,
acknowledged satisfaction of all debts secured to him

by it, and, on May 22, 1884, complainant, Garrett, executed a similar satisfaction and release, and the same was registered.

It further appears that, on January 19, 1878, or about two months after complainants had made the transaction with the bank, a judgment by motion was taken against H. M. Hayes for the amount of the judgment stayed by Joel A. Hayes, Sr. This judgment was taken in the name of Joel A. Hayes, Sr., * * * and recites that complainants had paid and advanced the amount to the bank for J. A. Hayes, Sr., necessary to redeem the lots, and hence the judgment was taken for their use and benefit. Complainant Garrett caused execution to issue on this judgment and sent it to Williamson County, where it was satisfied by a sale of H. M. Hayes' lands, and the money realized therefrom was paid over to complainant Garrett, amounting to $608, and a receipt was indorsed on the execution docket therefor signed by A. McClain, attorney for J. A. Hayes, Jr., and A. E. Garrett. Complainant Garrett sent part of this money to complainant Hayes, Jr., and retained a part himself, and states that it was applied to other debts owing him by his father-in-law, Joel A. Hayes, Sr. Complainant Garrett shows that this judgment was taken without his direction or knowledge by the attorney of the bank, but it appears that it was in accordance with instructions to his own attorney, McClain, who otherwise would have taken the same judgment, in the

same way, for the use of complainants at complainant Garrett's request. Learning that the judgment had already been taken by the bank's attorney, and in the manner suggested by him, that is, for use of complainants, complainant accepted the benefits of it and proceeded, as before stated, to collect it.

From the date of the deed to Mrs. Emily Hayes, in 1877, down to the death of Joel A. Hayes, Sr., in August, 1890, we hear nothing of complainants in connection with these lots. During this period of thirteen years they paid no taxes on them, and exercised no public acts of ownership, and made no claim of a public character except the deed, which they had registered soon after obtaining it. In 1887, about three years before Joel A. Hayes, Sr., died, the lots made a phenomenal rise in market value, but this seems to have aroused no interest or concern in complainants. In August, 1890, Joel A. Hayes, Sr., died, and soon thereafter his son, W. O. Hayes, ascertained the condition of the title to these lots, and wrote to complainant Garrett. Soon thereafter complainant Garrett came to Nashville, and went to the abstract office and had a conference with its manager, asking many questions in regard to the title to the lots, and within a month thereafter this bill was filed.

Upon a careful examination and analysis of the proof in this case, we are convinced that, whether the transaction between complainants and the bank is called a repurchase or a redemption, it was, in

any event, an arrangement made by the parties with
the bank to regain the lots for the use and benefit
of Joel A. Hayes, Sr., and in order to aid and
assist him in his financial troubles; that the amount
paid was slightly more than the debt bid on the lot,
is accounted for by the explanation of General
Thruston, the bank attorney, that the costs and
attorney's fees incurred about the sale were included
in the amount required to be paid. We are also
convinced that complainants were partially reimbursed
of the amount paid out by them from the collection
made from H. M. Hayes, and the balance was re-
leased to Joel A. Hayes by the complainants when
they satisfied the mortgage which they had upon the
lots in 1883 and 1884. It may be that when the
lots 11 and 20 were conveyed to Mrs. Emily Hayes
to satisfy her debts, the lots Nos. 23 and 41
were intended to go to Mrs. Cheatham in satis-
faction of her debt *pro tanto* or *in toto.*

The conduct of the parties toward each other
strengthens this conclusion. While Joel A. Hayes,
Sr., was involved to insolvency, he was desirous
that his brother's estate should not suffer loss by
him, and complainants, as his son and son-in-law,
were co-operating with him to avoid such loss. The
record discloses that Joel A. Hayes, Jr., was con-
tinually sending money to his father, contributing
to his support and maintenance and that of the
family so long as the father lived, and, when he
died, assuming the entire cost of his burial, exhib-

Garrett v. Belmont Land Co.

iting a touching instance of filial devotion, for which he expected and received no return, but, on the contrary, forgave his father all that he had advanced for him to maintain his credit and standing and to support his family. It appears that these matters were not carried on on a business basis, but one purely of devotion of a son to a father; and if the property had remained that of the son, it would, when the rise in values came, most likely have at once been turned over to the father. It is only on this basis that we can reconcile the delay and laches of complainants in bringing suit, or, at least, manifesting some interest in this property, which appears to have faded out of their recollection. We think any conflict between the testimony and the cotemporaneous deeds and decrees may be ascribed to defects in memory in regard to events happening more than thirteen years before the action commenced, during which time the parties appear to have paid no attention to the matter.

Both upon the defects in complainants' title and the merits of the case, we think they must fail in their suit, and the decree of the Chancellor is reversed, and bill dismissed, at complainants' cost.