BRIER HILL COLLIERIES *v.* GERNT.

(*Nashville.* December Term, 1914.)

**1. DEEDS. Construction.**

All parts of a deed must be construed together without regard to its formal divisions. (*Post, pp.* 546-549.)

Acts cited and construed: Acts 1819, ch. 28, sec. 1; Acts 1851-52, ch. 33, sec. 1.

Case cited and approved: Iron & Coal Co. v. Schoon, 124 Tenn., 176.

Code cited and construed: Sec. 3672 (S.).

**2. DEEDS. Construction. Estates conveyed. Limitations.**

The quoted words in a deed which conveys described land and which declares that the grantors convey "all their right, title, claim, and interest in" the land described, limit the conveying words and restrict them to the grantors' interest therein at the time of the making of the deed. (*Post, pp.* 546-549.)

**3. ADVERSE POSSESSION. "Color of title." Conveyances operating as color of title.**

A deed conveying described land, but only the grantors' rights therein, is not "color of title" to a parcel within the description previously conveyed by the grantors, and the grantee may not acquire title by seven years' adverse possession under the statute of limitations (Acts 1819, ch. 28, sec. 1). (*Post, pp.* 546-549.)

**4. DEEDS. Construction. Estates conveyed.**

A deed, which purports to convey all the grantor's title and which refers to his title papers which purport to convey an estate in fee to the grantor, incorporates the title papers and the title of the grantor passes, and where the grantor has only deeds giving color of title the color of title only is passed. (*Post, p.* 549.)

**5. EJECTMENT. Issues. Equitable relief.**

The court in ejectment may not reform deeds to the parties where their grantors are not parties to the suit. (*Post, pp.* 549, 550.)

**6. DEEDS. Conditions. Change by Subsequent deed.**

An agreement that a tract shall not be conveyed may be modified by a subsequent deed, which will stand unless reformed in a suit therefor. (*Post, pp.* 549, 550.)

**7. DEEDS. Description. Property conveyed.**

A deed, which describes the land conveyed by grant number and by metes and bounds, and which concludes "including 5,000 acres, platting out 3,000 acres, prior claims, and leaving 2,000 acres by estimation," passes title to a parcel within the grant where the parcel was included in an inferior grant and where there was no adverse possession thereof. (*Post, pp.* 550, 551.)

**8. EJECTMENT. Parties. Statutory provisions.**

Under Shannon's Code, sec. 4970, providing that any person having a valid subsisting legal interest in real property and a right to the immediate possession thereof may maintain ejectment therefor, plaintiff in ejectment must, to succeed, show both legal title and right to immediate possession, and one who has executed a deed of trust to secure a debt, retaining the right of possession until default, may not maintain ejectment without joining the trustee or mortgagee, for he has not the legal title. (*Post, pp.* 551-553.)

Cases cited and approved: King v. Coleman, 98 Tenn., 562; Lowry v. Whitehead, 103 Tenn., 396; Garrett v. Land Co., 94 Tenn., 459; Hubbard v. Godfrey, 100 Tenn., 158; Langford v. Love, 35 Tenn., 309; Edwards v. Miller, 51 Tenn., 314; Campbell v. Campbell, 40 Tenn., 325; Crutsinger v. Catron, 29 Tenn., 27; Bank v. Ewing, 80 Tenn., 598; Carter v. Taylor, 40 Tenn., 30.

Code cited and construed: Sec. 4970 (S.).

**9. MORTGAGES. Title conveyed.**

A trust deed or mortgage conveys the legal title to the trustee or mortgagee, and he is entitled to the immediate possession

unless the instrument contains a contrary provision. (*Post*, *pp*. 551-553.)

FROM FENTRESS.

Appeal from the Chancery Court of Fentress County.—A. H. ROBERTS, Chancellor.

CANATSER & CASE, for appellant.

JNO. F. McNUTT and J. T. WHEELER, for appellee.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This was an action of ejectment brought in the chancery court of Fentress county to recover a tract of land known in the record as the "Chism tract," lying in an interlap of grant No. 6418 with grant No. 6199. Both parties claim title from a common source, A. L. Crawford. He acquired a deed for a boundary of land lying within grant No. 6199, including the interlap just mentioned, from one R. H. Chism, on the 6th of October, 1882, and a deed for grant No. 6418 from one W. S. Snyder and others, on the 22d of December, 1883. On the 21st of August, 1885, A. L. Crawford conveyed to his son John L. Crawford the tract he acquired from Chism, and subsequently died, prior to 1890, leaving a will in which he devised all of his property in Tennessee to his son-in-law L. S. Hoyt and his four sons, one of whom was John L.

Crawford. On the 16th of December, 1891, John L. Crawford and the other devisees joined in a deed to defendant Gernt which conveyed the whole of grant No. 6418, and it is under this deed that Gernt claims title to the land in controversy, the Chism tract. On the 14th of April, 1892, John L. Crawford and his wife executed a deed to the Crawford Coal & Iron Company for the R. H. Chism tract and other lands, which deed, leaving out of consideration a clause which defendant's counsel insists must operate as an exclusion clause therein, presently to be mentioned, covers the interlap of the two grants Nos. 6418 and 6199. The deed to defendant Gernt was first recorded. It thus appears that Gernt has the older deed, first recorded, and would have the superior title but for the contention of the complainant that adverse possession was held by the Crawford Coal & Iron Company on the interlap for more than seven years after the date of the deed to it, and that therefore the complainant is entitled to recover. To this the defendant replies that the deed from John L. Crawford and wife to the Crowford Coal & Iron Company is not a color of title to the land in dispute. That deed ommiting the descriptive portions, is as follows:

"We, John L. Crawford and Mattie C. Crawford, his wife, of Lawrence county, Pa., for and in consideration of the sum of one dollar to us in hand paid, the receipt whereof is hereby acknowledged, have this day bargained and sold and do hereby convey to the Crawford Coal & Iron Company, a corporation char-

tered and organized under the laws of Tennessee, the following described tracts of land and other properties situate in the county of Fentress and State of Tennessee, to wit: (describing the lands) . . .

"To have and to hold the three tracts of land (stating acreage, etc.) . . . to the said Crawford Coal & Iron Company, its successors and assigns. *It being the true intent, purpose and understanding of the parties to this deed that the bargainors, the said John L. Crawford and Mattie C. Crawford, hereby convey and assure all their right, title, claim and interest in and to the properties hereinabove set out as fully as the same is in them vested and not otherwise.*

"Witness whereof we have hereto set our hands and seals this the 14th day of April, 1892.

"JOHN L. CRAWFORD.

MATTIE C. CRAWFORD."

The defendant contends that the last clause in this instrument, when taken in to consideration with the previous deed made by John L. Crawford and others to defendant, Gernt, operates to exclude the interlap of grant No. 6199 with grant No. 6418 (the Chism tract), and that therefore this deed is not a color of title to the interlap.

This contention is sound. All parts of the deed must be construed together without regard to its mere formal divisons. *Iron & Coal Co.* v. *Schwoon*, 124 Tenn., 176-209, 135 S. W., 785- 793, and cases cited. Thus construed, the language which we have italicized explains, qualifies, and limits the previous conveying

words so as to confine and restrict them to such "right, title, claim and interest," only, in the lands described, as was at the time vested in the vendors. At that time —that is, at the making of that deed—Crawford and wife owned no interest in the Chism tract, having previously conveyed that land to defendant Gernt. So, while the Chism tract is described in the deed, it is necessarily excluded from its conveying words; therefore the deed does not purport to convey that land and cannot operate even as color of title thereto. In *Schwoon's Case,* supra, the court considered the effect of similar words as importing color of title. The language of the deed there was, "all the right, title, and claim that I, as said executor, have in and to all that portion not theretofore sold," etc. Commenting on this, the court said:

"The point made on the expressions, 'all the right, title and claim,' presents more difficulty. However, when this is taken in connection with the will of W. C. Hill, and the tax deeds made to Hill, the difficulty vanishes. Each of these deeds purports to convey an estate in fee. That these deeds must be taken in connection with the will and Moffett's deed is manifest, since the executor expressly referred to the will, and, in purporting to convey the interest of his testator, necessarily referred to his title papers, both of which were duly registered in the county at the time his deed was made. Such reference was sufficient to describe the property and the interest conveyed."

Again, the court said on the same subject:

"It may be that a deed made by A. B., purporting to convey all of his right, title, and interest to a specified boundary of land, nothing else appearing, would not be an assurance of title; but, if accompanied by proof of deeds purporting to convey an estate in fee to him, the two taken together would constitute an assurance of title sufficient under our act of 1819, when supported by seven years' adverse possession, to effect the transfer of title. It is true that such a deed would not in and of itself convey title if A. B. had no title; but, united with proof of a deed purporting to convey title, it would amount to color of title. In this same connection should be considered our Act of 1851-52, c. 33, section 1, the contents of which appear in Shannon's Code, section 3672. This act provides that 'every grant or devise of real estate, or any interest therein, shall pass all the estate or interest of the grantor or devisor, unless the intent to pass a less estate, or interest, shall appear by express terms, or be necessarily implied in the terms of the instrument.' Under this statute, when one makes a deed to 'all my right, title, estate, and interest' in certain lands, or uses equivalent words, he necessarily refers to his title papers, and the deed conveys whatever interest those title papers show that he has; or in case his title papers do not really convey a title to him in fact and law, but only purport to convey such title, the effect would be the same; that is, the deed would carry whatever force or effect such assurance has under our stat-

ute of limitations, that is, section 1 of our Acts of 1819, ch. 28.''

. That is to say:

A deed purporting to convey all my right, title, and interest refers to my title papers, and, if it appears there is a deed purporting to convey an estate in fee to me, the reference incorporates that deed, and appropriates that assurance; if that deed contains words sufficient to make it a color of title to me, that color is passed to my vendee by the reference mentioned. If I have the real title, it is conveyed by such reference. If I have it not, but only deeds giving color of title, that color only is passed. If subsequent to a deed made to me I convey the same land to another, I have left in me neither title nor color to transfer by an instrument thereafter made in the form of a deed or other assurance purporting to convey all my right, title, claim, and interest. In the *Schwoon Case* it did not appear that Hill had made any conveyance after obtaining the deeds which gave him title, or color of title. In the case before us it appears that Crawford and wife had made such subsequent deed.

For complainants it is insisted that the deed to Gernt should not be held operative because it was made through inadvertence, in ignorance of the fact that the Chism tract was included within the bounds of grant No. 6418, and in the face of a prior written agreement between the parties that the Chism tract was to be retained, and not conveyed. We are unable to see how we can consider such a point in the present case, inas-

much as Crawford and wife are not before the court seeking a reformation, and the bill is simply an eject-ment bill brought by the Brier Hill Collieries, claim-ing to be the vendee of the Crawford Coal & Iron Com-pany. Moreover, even though there was a prior agree-ment that this land was not to be conveyed to Gernt, it was competent for the parties by a subsequent deed to make a different arrangement, and such deed must stand unless reformed in the usual way.

But complainant insists that, while the Chism tract lies within the boundaries of grant No. 6418, it was ex-cluded by the language of the deed to Gernt, of De-cember 16, 1891, describing the land intended to be conveyed. These words are:

"Being the same lands conveyed by Orion Clemens to Peter Schneitter by deed bearing date of July, 1859, recorded in Book I, p. 139, of the records of said county, and which was afterwards conveyed by the heirs of Peter Schneitter to A. L. Crawford by deed dated December 22, 1883, and recorded in Book Q, pp. 315, 316, in the register's office of said county of Fen-tress, to which two deeds reference is made for more practical description of said tract of land."

This is a mistaken view. It is true the deed from Orion Clemens to Schneitter after describing the land therein conveyed by the grant No. 6418, and by metes and bounds, concludes with the language: "Including 5,000, acres, platting out 3,000 acres, prior claims, and leaving 2,000 acres by estimation." This could not have referred to the Chism land because that land was

included in an inferior grant; earlier in date to be sure, but based on an entry younger than that on which 6418 was based.  The Clemens deed was executed on the 20th of July, 1859, before there was any adverse possession on the Chism tract, and the exclusion reference could not have been to any title acquired in that way. The deed from the heirs of Schneitter to Crawford describes the land merely by the grant number and by reference to the Clemens deed.  So we think there can be no doubt that the Chism land was included in the description contained in the deed to Gernt.  As before said, it may have been through mistake or inadvertence; but, if so, the pleadings are not in such condition that we can correct it, nor are the proper parties before the court for that purpose.

The deed of April 14, 1892, supra, not being operative as color of title to the Chism tract, so as to confer title on the Crawford Coal & Iron Company through adverse possession thereunder for seven years, under the first section of the act of 1819, thereby overriding the previous deed to Gernt, the deed of said Crawford Coal & Iron Company to Brier Hill Collieries conferred no title to it as to the Chism tract, and the complainant cannot recover.

The same result must follow on another ground, aside from the foregoing, and even on the assumption that title did pass to Brier Hill Collieries.  The latter on the 18th day of October, 1904, executed a deed of trust to the Mercantile Trust Company purporting to convey the Chism tract, along with many other tracts

of land, for the purpose of securing an issue of bonds. It is true that this instrument reserves to the maker of the trust deed the possession of the property until default, with the right to operate the mines on the lands, sell the product, and also parts of the land from time to time, requiring the trustee to join in the deeds in case of such sales and release his title to the purchaser, and a certain proportion of the proceeds of the sales of the output of the mines and of the sales of the tracts, to be turned over to the trustee to pay interest cupons as they should mature, and to create in the trutee's hands a sinking fund to pay the principal; but it is furthermore true that the instrument purports to convey the title of the lands to the trustee, and provides that in case of default he shall take possession of the lands and sell them to pay the debts secured.

In this State the complainant cannot succeed in ejectment unless he show both the legal title, and the right of immediate possession. Shannon's Code, section 4970. This section of the Code is sufficient to cover the point, but our cases hold with unanimity that the plaintiff inejectment must show the legal title in him. *King* v. *Coleman,* 98 Tenn., 562, 40 S. W., 1082; *Lowry* v. *Whitehead,* 103 Tenn., 396, 53 S. W., 731; *Garrett* v. *Land Co.,* 94 Tenn. 459, 479, 29 S. W., 726; *Hubbard* v. *Godfrey,* 100 Tenn., 158, 159, 47 S. W., 81; *Langford* v. *Love,* 3 Sneed (35 Tenn.), 309; *Edwards* v. *Miller,* 4 Heisk. (51 Tenn.), 314; *Campbell* v. *Campbell,* 3 Head (40 Tenn.), 325; *Crutsinger* v. *Catron,* 10 Humph. (29 Tenn.), 27. When a trust deed or mort-

gage is made in this State, the legal title to the property passes at once to the trustee or mortgagee, and he is entitled to the immediate possession unless the instrument contains a provision to the contrary. *Bank* v. *Ewing,* 12 Lea (80 Tenn.), 598, 600, 601; *Carter* v. *Taylor,* 3 Head (40 Tenn.), 30, 33. In the present case, as we have seen, the right of possession was reserved to the maker of the trust deed until default made. But, since both title and the right to immediate possession are required to support ejectment, the complainant could in no event recover without joining the trustee. This was not done.

Other grounds of defense are claimed, but we need not consider them, since the chancellor's decree must be reversed and the bill dismissed on each and both of the grounds already stated and considered.

The complainants will pay all of the costs of the cause.