## HUBBARD *v.* GODFREY.

### (*Knoxville.*    July 18, 1898.)

1. COLOR OF TITLE.    *What constitutes.*

   Deeds, though void or ineffectual to pass title for want of right or power in the maker to convey, are, nevertheless, available to the vendee holding possession thereunder, as color or assurance of title, within the requirements of the statutes of limitations.    (*Post, pp. 152–155.*)

2. ADVERSE POSSESSION.    *What is required.*

   The possession of land, evidenced by the erection thereon, successively at different points, of small rail pens where hogs and cows are occasionally fed, is not of that continuous, open, and notorious character required by the statutes of limitations. (*Post, pp. 155, 156.*)

   Cases cited: Hicks *v.* Fredericks, 9 Lea, 491; Pullen *v.* Hopkins, 1 Lea, 744.

3. EJECTMENT.    *No recovery without proof of title.*

   In ejectment the plaintiff cannot recover, even against a naked trespasser, without proof of a perfect title, either by deraignment from the State or by seven years' adverse possession under the required color of title.    He cannot recover upon proof of registered color of title and adverse possession thereunder, accompanied by payment of taxes on the land, for a period of less than seven years.    (*Post, pp. 156–161.*)

   Code construed: § 4970 (S.); § 3953 (M. & V.); § 3229 (T. & S.).

   Cases cited and approved: Huddleston *v.* Garrott, 3 Hum., 629; Hess *v.* Sims, 1 Yer., 144; Langford *v.* Love, 3 Sneed, 311; Campbell *v.* Campbell, 3 Head, 325; Lafferty *v.* Whitesides, 1 Swan, 123; Crutsinger *v.* Catron, 10 Hum., 24; Stinson *v.* Russell, 2 Tenn., 40; Kimbrough *v.* Benton, 3 Hum., 129; Evans *v.*

Hubbard *v.* Godfrey.

Belmont Land Co., 92 Tenn., 355; Garrett *v.* Belmont Land Co., 94 Tenn., 479; King *v.* Coleman, 98 Tenn., 570.

FROM CUMBERLAND.

Appeal from Chancery Court of Cumberland County. T. J. FISHER, Ch.

SNODGRASS, ROBINSON & LANSDEN for Hubbard.

TRACY & CATHER for Godfrey.

McALISTER, J. This is an ejectment bill to recover the possession of a tract of land comprising about 1,050 acres, situated in Cumberland County. Defendant answered, denying title of complainants, and denying also that complainants were in possession of the land at the time defendant entered. Complainants offered evidence to show title. Defendant showed no title in himself, but relied upon the failure of complainants to show title. The Court of Chancery Appeals affirmed the decree of the Chancellor, which was in favor of the complainants. Defendant appealed, and has assigned errors.

The Court of Chancery Appeals, by Judge Wilson, has filed a very elaborate opinion, presenting with great detail the facts of a very complicated litigation. Pretermitting a narrative of the details, we will content ourselves with a general statement of the case.

It appears from the findings of the Court of Chancery Appeals that in 1837 the State issued six grants, each for 5,000 acres of land, to one John B. McCormick. The lands embraced in one of these grants, or partly in two of them, were assessed for taxes to one James E. Manning, as the reputed owner, and the land so assessed to him was condemned by the Circuit Court to be sold for the payment of delinquent taxes. In July, 1855, the land was sold, and purchased by F. F. Narramore, James Scott, and P. M. Hoodenpile. On the third of July, 1857, the Tax Collector executed to the purchasers a deed, wherein the land was fully described and bounded. No conveyance of this land to Manning by John B. McCormick, the original grantee, is shown in the record. It further appears that shortly after this purchase the purchasers, by a parol agreement, partitioned the land among themselves, and the part allotted to each was surveyed and the lines and corners of each share distinctly marked. The land in controversy in this litigation was that part assigned under the parol partition to P. M. Hoodenpile. This land was afterwards assessed to said Hoodenpile for taxes, and, in 1868, was sold for the payment of delinquent taxes, and at this sale was purchased by Seth Arnold, George Linder, and O. H. Perkins. On the seventeenth of August, 1874, complainants purchased the one-third interest of Arnold in this land. Linder and Perkins, on December 9, 1873, and June 18, 1874,

Hubbard v. Godfrey.

respectively, conveyed their interests to one W. W. Powell. It further appears that complainants, at a subsequent time, instituted proceedings in the County Court of Cumberland County against Charles W. Powell, minor heir of W. W. Powell, for the purpose of having this land partitioned, and to subject the interest of Powell to sale to pay its part of the cost of the proceeding and the taxes complainants had paid on the land for W. W. Powell. Such proceedings were had that commissioners were appointed, who divided the land, assigning 316⅔ acres to complainants. This report was confirmed, and the costs taxed one-third to complainants and two-thirds to the estate of W. W. Powell. A decree was also pronounced ordering the Clerk and Master, as special commissioner, to sell the interest of the minor to pay costs and taxes, and on the fifteenth of December, 1883, this interest was sold to the complainants, and the sale confirmed by the Court.

On April 27, 1885, the Clerk of the Court made complainants a deed to this Powell interest, and thus they became the owners of the whole tract allotted to Hoodenpile under the parol partition between him, Narramore, and Scott, made in 1857 or 1858. The Court of Chancery Appeals was of opinion that the assessment of the land in Bledsoe County to Manning for taxes, the sale thereof to Scott, Narramore, and Hoodenpile, and the deed of the Tax Collector to them, purporting to convey the fee, created an assurance or color of title under our statute. Code

(Shannon's), § 4456. The land being in Bledsoe County at the time it was assessed and the taxes accrued, the sale and deed made by the official who sold, or his successor in office, although the land became a part of Cumberland County on its organization, was not absolutely void. "It was," says the Court of Chancery Appeals, "an assurance or color of title, and possession thereunder for the prescribed period would give a good title." Cumberland County was not organized until 1856. Acts of 1855–56, Sec. 11. The Court of Chancery Appeals was also of opinion that when this land was sold for delinquent taxes due from Hoodenpile the deed of the Tax Collector of Cumberland County to the purchasers, Arnold, Perkins, and Linder, constituted color of title, but that on account of certain infirmities in the proceedings they did not acquire a perfect title. As already stated, Arnold sold and deeded his undivided one-third interest to complainants. The other two parties, Perkins and Linder, sold and conveyed by deeds to W. W. Powell. These deeds were put of record, and from this time on the land was assessed for taxes and the taxes paid by these purchasers. Powell died, and the interest of his minor heir, Charles L. Powell, was sold by the County Court of Cumberland County, and acquired by complainants. On account of fatal irregularities in the latter proceedings, the sale of the interest of the minor heir was absolutely void. We also concur with the Court of Chancery Appeals that the

partition proceeding in the County Court of Bledsoe County, wherein the Court assumed to sell this land as the property of the minor heir of P. M. Hoodenpile, deceased, for reinvestment for the minor in the State of Kentucky, was also void.

The Court of Chancery Appeals, very properly, held that the deed of the Tax Collector of Cumberland County to Arnold, Perkins, and Linder was mere color of title; that the deed of Arnold of his interest to complainants was only an assurance of title; that the deeds of Linder and Perkins to W. W. Powell were but assurances of title; and that the deed of the Clerk of the County Court of Cumberland County, purporting to convey the interest of W. W. Powell, was likewise merely an assurance of title. The Court of Chancery Appeals further found that the deeds of complainants to this land were a matter of record; that the land was assessed to them for taxes; that they had caused small pens to be erected on it to evidence their claim and ownership; that these pens were erected at one point, then moved a short distance to another, then a short distance to another, and then a short distance to another, all of them being, however, on the land.

The Court of Chancery Appeals, however, find as a fact, that these possessions had not been kept erected, in the manner stated, on this land continuously for seven years before the wrongful entry of defendant. It is, moreover, conceded by that Court that the erection of a small rail pen on land, where

hogs or cows are occasionally fed, is not such an open and notorious possession, or of such a character as to meet the demands of our statute. *Hicks* v. *Fredericks*, 9 Lea, 491. "Such an occupation," says Judge Freeman in the last case, "on such a tract of land, would not be a real, *bona fide* possession, notifying the owner of an adverse claim and occupancy." "Actual possession," says Judge Mc-Farland, "for seven years is necessary to give the younger grantee the better title under our act of 1819; and actual possession is generally understood to mean an inclosure by buildings, fences, or other similar improvements." *Pullen* v. *Hopkins*, 1 Lea, 744. The Court of Chancery Appeals, however, assert that possession, under color of title and claim of ownership, even for less than seven years, is maintainable against a pure trespasser such as this defendant appears to be from the record. "He does not even pretend," says that Court, "to have any claim or right to this land, and offers no evidence at all of any right of any kind. Can he be dispossessed by these complainants, who have been claiming this land under color of title and who have been paying taxes on it for years, and have had agents on it and about it to protect it from trespassers and depredation. "We take it to be good law," says Judge Wilson, "as well as in accord with sound reason and justice, that where a party has been in possession of land, under color of registered title, and claiming thereunder for some

years, during which time the land has been assessed
to him for taxes which he has paid, may recover
against one who shows no title to the premises, but
merely possession at the time the suit is brought,
although the title of the party suing may be infe-
rior to that of the real owner," citing *Herker* v.
*Burkbeck*, 3 Burr., 1556; *Jackson* v. *Harder*, 4
Johns. (N. Y.), 202 (S. C., 4 Am. Dec., 262);
*Cutts* v. *Spring*, 15 Mass., 134; *Herbert* v. *Little*,
9 Cush., 475; *Pettengil* v. *Boyton*, 139 Mass., 244.
The Court cites *Litchfield* v. *Situate*, 144 Mass.,
97, in which it was held that one being in posses-
sion, even if it is not such as would amount to a
disseizin of the true owner, might maintain trespass
against a mere intruder without right upon that
possession, and if he is ousted by such intruder,
may maintain a right of entry against him.   Also,
*Dale* v. *Faivre*, 43 Mo., 556, in which it was said
that prior possession, accompanied by a claim of the
fee, raises a presumption of title, and is sufficient to
support the right to eject him who has only the
naked possession, and that the grantee of the person
so holding prior possession succeeds to his rights.
Also, *Smith* v. *Lorillard*, 10 John., 355, in which
it is said that the first possession should in such
cases be the better evidence of right.   Ejection is
a possessory action, and possession is always presump-
tion of right, and it stands good until other and
stronger evidence destroys that presumption."   Many
other cases are cited in support of this position.

"Again," says Judge Wilson, "we do not dispute the general rule that the plaintiff in ejectment must rely for a recovery upon the strength of his own title and not on the weakness of his adversary's." *Huddleston* v. *Garrott,* 3 Hum., 629. "This well-settled rule," continues the Judge, "like most all general rules, has qualifications equally well settled, and one is, that where a party has been in peaceable possession, under color of title, documentary in character, and a matter of record, purporting to convey the fee, he may recover on this title against a defendant who is a mere trespasser," citing Am. & Eng. Enc. L., Vol. VI., 227–229, and cases cited.

We are unable to concur with the Court of Chancery Appeals in the conclusions of law reached, since we regard them as wholly at variance with the law of ejectment, as well settled in this State. The action of ejectment has been variously declared to be a personal action, a mixed action, and a real action. 6 Am. & Eng. Enc. L., 225; Tyler on Ejectment and Adverse Enjoyment (edition 1876), 36. At common law the action was strictly a possessory remedy. 6 Am. & Eng. Enc. L., 225; 3 Comyn's Digest, title "Ejectment;" Tyler on Ejectment and Adverse Enjoyment (edition 1876), 70. The right to recover titles by ejectment was given by the statute 32 Henry VIII., Ch. 7. Adams on Eject-ment, 30.

In many of the States of the Union it is still regarded as a possessory remedy, and many of the

cases cited by the Court of Chancery Appeals are based upon the common law, or on local statutes, where the action is merely to determine the right to present possession, and not to settle the title. In Tennessee ejectment, is, by the Act of 1851–52, Ch. 152, Sec. 2, distinctively a real action. That Act provides, viz.: "Any person having a valid, subsisting, legal interest in real property, and a right to the immediate possession thereof, may recover the same by an action of ejectment." Code (Shannon's), § 4970. Ejectment has been a real action in this State since the Act of 1801, Ch. 6, Sec. 60. *Hess* v. *Sims*, 1 Yer., 144.

In *Langford* v. *Love*, 3 Sneed, 311, this Court said, viz.: "The action of ejectment is strictly a legal remedy. It looks only to legal title. It cannot be maintained unless the plaintiff has the legal estate in the premises, and an equitable title cannot be set up in this action against the legal title." *Campbell* v. *Campbell*, 3 Head, 325; *Lafferty* v. *Whitesides*, 1 Swan, 123; *Crutsinger* v. *Catron*, 10 Hum., 24. Complainants must show a deraignment of title to himself by connected conveyances from the grantee, or show seven years' actual adverse possession under a grant or color of title. *Stinson's Lessee* v. *Russell*, 2 Tenn., 40, bottom p. 447; *Kimbrough* v. *Benton*, 3 Hum., 129.

In *Evans* v. *Belmont Land Co.*, 92 Tenn., 355, this Court said, viz.: "Complainant could not recover in ejectment upon a showing that she had acquired a

color of title. She must show a perfect legal title, and recover upon the strength of her title, and not upon the vices in the adversary title.''

. Again, in *Garrett* v. *Belmont Land Co.*, 94 Tenn., 479, it was held ''that under an ejectment bill alleging a legal title, complainant cannot recover upon proof of an equitable title, and this is so whether the suit is brought in a Court of Law or Equity.''

In *King* v. *Coleman*, 98 Tenn., 570, it was said: ''The person seeking relief must show a complete legal title in himself, however wrongful the possession of the defendant may be.''

The Court of Chancery Appeals, however, held that, as against a mere trespasser, complainants may recover by showing color of title and possession for a term less than seven years. The Court of Chancery Appeals find that complainants did not acquire a perfect legal title to the land, and did not connect their chain of title with the original grant, and that complainants only show a color of title. That Court further finds that complainants had failed to show an actual, continuous, adverse possession of said land under their color of title for a period of seven years. The Court of Chancery Appeals further finds that defendant had no title, but was a mere intruder or trespasser upon the land. That Court, however, held that while complainants were not possessed of the legal title to the land in controversy, either by deraignment from the State or by seven years' adverse possession under color of title, they might

maintain ejectment against the defendant, who shows no title in himself and is a mere trespasser.

The fundamental error, as we conceive, in the opinion of the Court of Chancery Appeals, is in following a line of cases from other States, in which ejectment is considered a possessory action merely, and in ignoring our own statute and decisions which regard it as a real action. The fact that defendant is a trespasser is of no consequence to complainants, since they have shown no legal title, and the law presumes that defendant is holding for the true owner, and his possession is, therefore, lawful against all persons who do not hold the legal title. The decree of the Court of Chancery Appeals is, therefore, reversed and complainant's bill is dismissed, but without prejudice.