## BOLTON COLLEGE v. R. M. WELLBORN et al.

Western Section.   February 5, 1926.

Petition for Certiorari denied by Supreme Court April 9, 1927.

1. **Deeds.  Amount of land conveyed by deed held not affected by a later decree in equity.**

In an action involving the title to real estate, where the land in question was originally conveyed as a part of three hundred and sixteen acres, and thereafter the grantee brought a suit in equity alleging that the deed described more land than was actually conveyed and a court of equity so found, but a later survey showed that there was actually three hundred and sixteen acres in the tract conveyed, held that legal title remained in the grantee regardless of the decree in equity.

2. **Ejectment.  In ejectment suits, plaintiff must show title in himself.**

In ejectment suits plaintiff must deraign title from the State by a grant or from a common source, or he must prove such long possession as that the court will presume that the land was granted to him or his predecessor in title, or that his possession was under a color of title perfected by the statute of limitations.

3. **Estoppel.  Laches is available as a defense to an action to remove a cloud on title to real estate only when plaintiff is out of possession.**

Laches is not available as a defense to an action to remove a cloud on the title except where the plaintiff is out of possession and "out of possession" does not mean a mere failure of the owner to be in actual  possession of wild or unoccupied land.

4. **Limitation of actions.  The true owner of real estate is in constructive possession of his unoccupied land.**

The true owner, in legal contemplation, is in constructive possession of his unoccupied land if no one else is holding adversely, and he does not have to maintain actual possession to assert his rights.

5. **Limitation of actions.  Merely cutting of timber from land is not sufficient to establish adverse possession.**

An attempt to show possession by the mere cutting of timber is not sufficient where adverse possession is relied upon to defeat the superior title.

6. **Limitations of actions.  Evidence.  Evidence held to show plaintiff's action was not barred by limitation.**

In an action to recover real estate where the evidence showed that the party from whom complainant claimed to derive title had originally conveyed the land to another party and that this party had later claimed a shortage in the land conveyed to him and by a decree in equity had been awarded a recovery against the original grantor for the amount paid for the land in question held that by virtue of that decree the original grantor then became the true owner of the property notwithstanding the record title was outstanding and since the land was wild it was in the constructive possession of the owner and a mere cutting of the timber did not start the statute of limitations to run, so that the original owner was entitled to recover possession of his land which was now claimed by the defendant.

Appeal from Chancery Court, Shelby County; Hon. F. H. Heiskell, Judge.

J. H. Malone, of Memphis, for appellee.

R. L. Bartels, Crabtree & Crabtree and Anderson & Heiskell, all of Memphis, for appellants.

OWEN, J. The complainant, Bolton College, is an educational institution situated or located in the 1st Civil District of Shelby county, Tennessee. It is incorporated and as such corporation it instituted this suit. The seven trustees of said college also, as trustees, were party complainants. The bill was filed August 13, 1920.

The defendants, who have appealed, are the heirs and personal representatives of R. M. Wellborn and Russell Jones. Both Wellborn and Jones died during the pendency of this litigation. The unknown heirs of Lucassua J. Carnes and J. C. Bledsoe were made party defendants by publication. Pro confesso was taken as to these unknown heirs. There were other defendants, but the only two defendants who litigated or resisted complainant's bill were R. M. Wellborn and Russell Jones. Russell Jones was the father-in-law of R. M. Wellborn. They were both citizens of the 1st Civil District of Shelby county, Tennessee.

The suit was instituted to recover 41.31 acres of land lying south of what is known as Loosahatchie River in Shelby county. This land was not in cultivation and had never been cleared. The bill also sought to have the pretended claims of the defendants removed as clouds on complainant's title. The bill further alleged that Wellborn and Jones had set up a claim to the ownership of the land in controversy, and had been cutting and removing timber from said tract, and the bill sought to recover a money decree against R. M. Wellborn to the extent of some $2200, representing the value of the timber Wellborn is alleged to have cut from the land within a short time prior to filing of complainant's bill.

''The theory upon which the complainant's right to recover this land is predicated, briefly is this—.

''That by decree of the chancery court at Memphis, rendered in the year 1851, William Battle was awarded a tract of land consisting of 370 acres; but which, by virtue of concessions, made by him to one I. Bates—as the result of an older grant—was reduced to 316 acres. By mesne conveyances, it is alleged that this 316 acres was vested in Wade Bolton, who in turn, conveyed it to Josephus Bledsoe—the latter paying therefor partly in cash and partly by notes; that in the year 1872 Bledsoe filed a bill in the chancery court at Memphis against E. M. Apperson as the executor of Wade Bolton, averring that the tract of land conveyed to him by Bolton as 316 acres contained in fact only 237 acres, and he—the

said Bledsoe—sought an abatement in the purchase price on account of said shortage;

"That the chancery court, about the year 1872, rendered a decree in accordance with the prayer of Bledsoe's bill, which decree recited that there was a shortage of 89 acres in the tract which Bolton had sold to him as 316 acres, and ordered and decreed an abatement of the purchase money correspondingly.

"That 'there was in point of fact no such shortage as 89 acres . . . In this connection complainant is advised that although Mr. Bolton conveyed the whole or entire tract of 316 acres to Josephus Bledsoe, that in his lifetime said Bledsoe was estopped by the averments of his bill aforesaid, which he swore to, and by the decree he procured the court to enter therein, to set up title to the so-called shortage of 89 acres; and that his heirs since his death are likewise estopped to set up title thereto, and that such title as was vested in said Bledsoe to the so-called shortage of 89 acres, by virtue of the deed from Bolton to Bledsoe, was held in trust for the use and benefit of the complainant . . .'

"The bill admitted that pursuant to the court decree Bledsoe had paid to Apperson as executor of Bolton the balance of purchase money due; and that Apperson in turn had executed a quit-claim deed to Bledsoe, releasing and conveying to him the tract of land which Bolton had originally conveyed to him and under the same description.

"Assuming that the property sued for herein constituted a part of the 316 acres, complainant, by virtue of being the residuary legatee under Wade Bolton's will, insists that under the proceeding of Bledsoe v. Apperson and the fact stated in the above quotation from the original bill, there was an implied reverter of the 89 acres (as to which it is claimed there was in fact no shortage) to Wade Bolton, and consequently to it as his residuary legatee; and that the land sued for is part of said 89 acres."

The defendants Wellborn and Jones demurred to the bill on two grounds: (1) that the bill showed an outstanding title in the heirs of one Josephus Bledsoe; and (2) that under the averments of the bill the cause of action was barred by the statute of limitations of seven years.

This demurrer was overruled, the defendants excepted thereto, and upon the defendants' Wellborn and Jones answer, they made the following defenses in their answer:

"1. A denial of all the material allegations of the bill.

"2. An averment that Russell Jones, the father-in-law of the defendant Wellborn, deeming that he had title to the land in controversy under a decree of the probate court of Shelby county Tennessee, rendered in 1880 in a case styled Wherry v. Wylie, then

went into possession of the land and remained in possession up to the time of filing the bill, exercising all of the acts of ownership over the land of which it was susceptible; that this possession was open, notorious and adverse; and that by virtue of said possession, and the statute of limitations of seven and twenty years, the complainant's suit or claim was barred.

"3. That irrespective of the defendant's possession, the complainant's suit was barred after seven years from the time its cause of action accrued, which, under the theory of the complainant's right to recover, was in the year 1872, when the court rendered its decree in the case of Bledsoe v. Apperson, executor.

"4. That the complainant had been guilty of laches in waiting until fifty years after the occurrence of the facts upon which the claim is predicated within which to institute its suit, and after all of the parties familiar with the circumstances had died."

On June 29, 1922, the defendant Russell Jones died, and it appears that he had conveyed all his interest in the matter in controversy to his daughter, Oma Wellborn, wife of R. M. Wellborn. The cause was revived against Mrs. R. M. Wellborn.

On April 1, 1925, the defendant R. M. Wellborn died intestate and the cause was revived against his widow, Oma Wellborn and against Herman J. Wellborn, administrator of R. M. Wellborn, and also against Herman J. Wellborn and Lillian Wellborn, the heirs or children of R. M. Wellborn.

Said order of revival also provided that as to Russell Jones, deceased, "The cause be revived in her name as successor to the title to said real estate claimed by said Russell Jones, deceased."

With the pleadings thus formed a number of depositions were taken and the transcripts in other lawsuits were introduced. One of these lawsuits involved the timber on this same land now in controversy—the case of D. E. Young v. R. M. Wellborn, Shelby Equity. Another transcript was the case of Russell Jones v. Mrs. Mary Fleming, involving the land and timber now before the court. Both of these lawsuits had been determined some years prior to the final decree in this cause.

It appears that the defendant excepted to the court considering these transcripts, and it appears that the court did put down an order sustaining defendants exceptions to the transcripts, but upon final decree the court considered said transcripts and proceedings in evidence and in determining its decree in the instant case, and "upon final hearing the court decreed that the property in controversy belonged to Bolton College, the complainant, in fee and that it was entitled to recover the possession thereof; that R. M. Wellborn and Russell Jones had cut timber from the land, and a recovery was given to the complainant for the sum of $2,640.28 as

representing the value of the timber cut with interest, said decree running against Herman J. Wellborn, administrator of R. M. Wellborn, deceased, and 'Mrs. Oma Wellborn and L. F. Jones the only children and representatives of the personal estate of Russell Jones, deceased, . . . to be levied of the goods and chattels, rights and credits of said estates, which may come into the hands of said representatives of said estates respectively,' etc.

"From so much of said decree which was adverse to them the defendants, Wellborn et al., appealed to this court; and from so much of it as was adverse to it, the complainant likewise appealed."

Both parties have assigned errors in this court.

The complainant has assigned as error the action of the court in sustaining defendant's exceptions to the introduction of the Supreme Court records in the case of Young v. Wellborn and Jones v. Fleming, that marking these exceptions sustained was a mere inadvertence on the part of the court because the court in its decree referred to both of these records and showed that he did consider the same. The complainant also introduced a certified copy of the execution in the Supreme Court in the case of Young v. Wellborn, which execution showed the amount of the value of the timber which Wellborn and Jones cut from the lands in suit, and the Chancellor used this certified execution as a part of his decree in ascertaining the amount due the complainants for timber cut.

The defendants have assigned errors as follows:

"1. The court erred in overruling the demurrer, and also in decreeing that the complainant, Bolton College, was the owner in fee, and entitled to recover the land in controversy—

"(a) The legal title to the land decreed the complainant was outstanding in a third party;

"(b) An equitable title is not sufficient to justify a recovery of land in ejectment; or to sustain a bill quia timet to remove cloud upon title;

"(c) The chancery proceeding of Bledsoe v. Apperson, and the decree therein (constituting the basis of complainant's claim), is conclusive upon the complainant and not subject to collateral attack;

"(d) If the decree in Bledsoe v. Apperson be subject to collateral attack and is void and erroneous as to decreeing a shortage of eighty-nine acres, it is void in toto; and therefore availeth the complainant nothing,—the legal title being outstanding in a third party;

"(e) Disregarding Bledsoe v. Apperson altogether, the outstanding legal title is in Josephus Bledsoe;

"(f) The complainant fails to deraign title from the State;

"(g)  The complainant fails to identify the land sued for as a part of the William Battle 316 acres, the source of complainant's title;

"(h)  If complainant's theory be correct, and he be entitled—by virtue of an implied reverter based upon the decree in Bledsoe v. Apperson being erroneous—to eighty-nine acres of the 316-acre tract, there is nothing in the record to show why that reverter should apply to the particular forty-one acres sued for rather than some other part of the 316 acres;

"(i)  Assuming as correct complainant's theory that there was no shortage as decreed in Bledsoe v. Apperson, its remedy is one by personal action against Josephus Bledsoe and his estate to recover amount abated, and not the remedy of ejectment, or bill to recover possession and quiet title;

"(j)  The statute of limitations of seven and twenty years has barred complainant's right;

"(1).  The undisputed facts show the defendant Russell Jones, and those claiming through him, to have been in possession of the land sued for, for a period of practically fifty years;

"(2).  Complainant's remedy to recover is barred by the second sec. of the Acts of 1819, chap. 28; and that irrespective of defendant's possession;

"(k) ⸱Complainant is guilty of laches.  That upon which he predicates his right to recover occurred more than fifty years ago, at which time his cause of action, if any, accrued; and witnesses familiar with matters relevant, are long since dead."

"2.  The court erred in sustaining the exceptions filed by the complainant. to certain evidence given by the witnesses, Monroe Gotten and Luther F. Jones, to the effect that they had cut timber off the land in controversy twenty or more years prior to the filing of complainant's bill, and that this timber was cut at the instance of Russell Jones; likewise, the evidence of R. M. Wellborn to the same effect.

"3.  The court erred in rendering a money judgment for the value of the timber against the defendants other than the defendant Herman J. Wellborn as administrator of R. M. Wellborn.

"4.  This assignment also complains of a money decree being rendered against Oma Wellborn and L. F. Jones as the only children and representatives of the estate of Russell Jones, and in reviving the cause against them as such representatives."

Briefly stated, the facts surrounding the instant lawsuit are as follows:

Wade H. Bolton, a wealthy land owner, died testate in Shelby county, July 20, 1869.  On August 10, 1868, Wade H. Bolton had written a remarkable will and after making many bequests and

legacies to various persons, by the fourteenth item of his will Mr. Bolton devised a farm of 300 acres in the 1st Civil District of Shelby county, Tennessee, to certain trustees for the purpose of erecting a college of learning on the said farm, which he designated as the Hoboken Farm. He also gave $10,000 to erect suitable buildings thereon. By the fifteenth clause of Mr. Bolton's will he made this school a residuary legatee and as his residuary legatee complainant has insisted that it is entitled to the forty-one and thirty-one hundredths acres of land in controversy and the timber which has been cut therefrom. The will of Mr. Bolton is quoted at large by the Supreme Court in opinion by Justice Cooper in the cause of Cannon v. Apperson, 14 Lea, p. 554. E. M. Apperson, a prominent business man of Memphis, was named as executor in the Bolton will, and Apperson duly qualified. Bolton's will was also before the Supreme Court in a later case of State v. C. E. Smith et al., 16 Lea, p. 622.

Some years after Bolton's death the complainant procured a charter from the State of Tennessee. It has been reliably stated that more litigation grew out of the administration of Mr. Bolton's estate probably than from any other estate in Shelby county.

On August 1, 1868, Wade H. Bolton conveyed by deed to Josephus L. Bledsoe a tract of land containing by estimation 316 acres. Bledsoe paid part cash and executed notes for the deferred payments for this tract of land. Bolton had bought the tract of land at a foreclosure proceeding that he had instituted against one Ben Harrell, Ben Harrell having borrowed money from Bolton to purchase the 316 acres from L. L. Battle. L. L. Battle had received the land by gift from his father, William Battle, and William Battle had procured the 316 acres by decree in the cause of William Battle v. John Wherry in the chancery court of Shelby county Tennessee on the 1st day of December, 1851. After the death of Bolton, Josephus Bledsoe, who was a nephew of Bolton and a legatee, filed a bill in the chancery court in 1872 in Shelby county, claiming that there was a shortage in the acreage of the deed from W. H. Bolton to Josephus Bledsoe, and the said acreage was short eighty-nine acres. Bledsoe was successful in his suit and he procured a decree reducing his consideration in proportion of eighty-nine acres to 316 acres. He paid the balance and E. M. Apperson, the executor, made a quit-claim. In the bill of Bledsoe v. Apperson, executor of W. H. Bolton, the description of the land as shown by Exhibit A, is as follows: same being the description in the deed from Bolton to Bledsoe:

Situated, lying and being in the county of Shelby and State of Tennessee, two certain tracts of land, that of Lucius L. Battle had on the 16th of December, 1864, sold to B. T. Harrell, one tract known

as the Sander's occupant, lying on each side of Loosahatchie River, containing 316 acres, joining the lands of Stuart Harris, et al.

"The grant from Tennessee which shows the butts and bounds for 200 acres and the description of the chancery court at Memphis of William Battle v. John Wherry in which a decree for 172 acres was made the said William Battle, but fifty acres (of the 172 acres) was held by J. Bates as an older claim, and which leaves under the decree 116 acres, which will more fully appear by referring to a deed of gift made by William Battle to Lucius L. Battle on March 1, 1855, making in all 316 acres. The said Bolton derived his title by purchase under decree in chancery court of Memphis in case W. H. Bolton v. B. T. Harrell in February, 1868."

The complainant Bledsoe alleged that he had had John Brown, county surveyor of Shelby county, to make a survey of the lands he purchased from W. H. Bolton and Brown's survey showed that there was only 237 acres in the tract. A plat, copied from the plat of John Brown, surveyor, is found on p. 200 of the transcript.

It appears after the death of Josephus Bledsoe, Lucassie J. Carnes and J. C. Bledsoe sold the land that Bledsoe had purchased from Bolton to one Thomas Fleming. Fleming died and the Bledsoe land was assigned to Mrs. Mary Fleming, the widow of Thomas Fleming, as homestead and dower. She sold the timber on said tract to D. E. Young for $2500 cash. When Young began to cut the timber the defendants Jones. and Wellborn in the instant case filed a bill for injunction, etc., against Mrs. Fleming and sought to recover the timber. They were unsuccessful and Young proceeded to cut under his purchase on the timber lands of Mrs. Fleming north of Loosahatchie River. While Young was cutting and removing the timber north of Loosahatchie River under his purchase from Mrs. Fleming, Wellborn began to cut timber south of Loosahatchie River on the Bledsoe-Bolton-Fleming tract. Young instituted a suit of replevin in the chancery court. He was unsuccessful. He removed about $2000 worth of logs under his replevy writ, sold the same and his bondsmen on the replevin bond were held liable for the value of the logs. Young says he lost the case because his attorney did not understand the lawsuit. We are glad that he did not charge up an error to the court; however, Mr. Young kindly stated he has no grievance against the attorney for his lack of success.

While the battle was waging between Young and Wellborn, another Richmond entered the field in the form of the complainant in the instant case. This complainant filed a petition in the Young-Wellborn litigation and desired to come into that litigation and set up its claims to the timber. The court denied the complainant the right to enter the legal arena at that time; thereupon the complainant filed the original bill in the instant case.

We find as a fact that Wade H. Bolton on the 22nd of February, 1868, purchased at a chancery sale made by the chancery court of Shelby county, 316 acres of land in Shelby county, which land he later conveyed by warranty deed on August 1, 1868, to Josephus Bledsoe. The description of the 316 acres by metes and bounds is as follows:

Beginning at the northwest corner of said tract and running thence south seventy-four and thirty-six hundredths chains to a stake; thence east fifty and fifty hundredths chains to a stake; thence north fifty-two and twenty-five hundreths chains to a stake; thence west twenty-one and thirty hundredths chains to a stake; thence north eighteen and seventy-four hundredths chains to a stake; thence west seventeen and ninety hundredths chains to the beginning.

After Bledsoe filed a bill against Bolton's executor claiming a shortage, he had the county surveyor of Shelby county, John Brown, to make a survey of the lands that Bledsoe had purchased from Wade H. Bolton. Brown gave his deposition on April 25, 1874, in the case of Josephus Bledsoe v. E. M. Apperson, executor of Wade H. Bolton's estate. Brown testified that he knew the tract of land Bolton had conveyed to Bledsoe. He testified that he made the survey in November, 1869. Brown filed a plat showing his survey.

He extended his west line from the northwest corner of the tract, which we have designated as the beginning, south seventy-two and fifty hundredths chains. Brown failed to go one and eighty-six hundredths chains further south to the original southwest corner. Just why he stopped when he did in running the west line and going south we do not know. If he had gone south one and eighty-six hundredths chains he would have gone to the north bank of Loosahatchie River. Brown then ran his east line thirty-nine poles stopping at a stake, and then north fifty-two and twenty-five hundredths chains to the north line and followed the original line to the beginning. Thus it will be seen that Brown left out of the Bledsoe survey a strip one and eighty-six hundredths chains by fifty chains in length across the southern part of said tract. He also left off the east side of said tract above the strip we have described across the southern part a strip eleven and fifty hundredths chains in width by fifty and thirty-nine hundredths chains in length, which is the part of the land in dispute. Loosahatchie River crosses this eastern strip nearly in the center. A little more acreage is south of Loosahatchie than lies north. None of that portion lying north of Loosahatchie and omitted by the Brown survey is in dispute in the instant case. Mrs. Mary Fleming, the widow of Tom Fleming, is in possession of that part north of Loosahatchie omitted in the

Brown survey. She sold the timber on this omitted part of the tract to D. E. Young. It is the timber cut off that portion of the Brown survey south of Loosahatchie over which D. E. Young and defendants Jones and Wellborn had a lawsuit, which we have heretofore referred to. This tract of land containing the 316 acres was surveyed by Paul Gaines, a competent surveyor, in 1920. Mr. Gaines made the west line seventy-four and forty-two hundredths chains, which is six hundredths chains more than the original survey called for. Mr. Gaines explained that lines have lengthened in his experience as a surveyor in the past fifty years, but there is no material discrepancy.

Thus it will be seen that Josephus Bledsoe succeeded in having the chancery court of Shelby county to allow him a credit for the shortage in acreage in the tract conveyed to him by Wade H. Bolton based upon the testimony of John Brown surveyor, who had made a mistake in surveying the 316 acres of land. The proof clearly indicates that there was a plain marked line on the south line and east line of the 316 acres, which plain marked line had been made prior to the John Brown survey, and evidently fifty or sixty years before Paul Gaines' surveyed the tract. Numerous trees on both the south and east lines had been hacked or marked and by these marks it is shown that these lines were established fifty or more years before Gaines made his survey.

We find as a further fact that the defendants have no title to the land in dispute by any registered muniment of title or by any adverse possession. Russell Jones owned a tract of land lying south of the 316 acres. He had none of the land under dispute under fence and none of it was ever in cultivation. Russell Jones and his son-in-law Wellborn cut timber from this land, but they were merely trespassers. We agree that the land has been properly termed by the public as "lost land." This is the proper title to bestow upon it. Title passed out of Wade H. Bolton into Josephus Bledsoe. Josephus Bledsoe's heirs, his children, conveyed their land and the land their father had purchased from Wade H. Bolton to Tom Fleming. Tom Fleming's widow and heirs are now in possession of all of the 316 acres except the forty-one acres in dispute.

The controlling question in this lawsuit as we understand it, is whether or not the validity of the decree against Apperson as executor of Wade H. Bolton's estate in suit brought by Josephus Bledsoe claiming a shortage in acreage, and in which Bledsoe was successful, is binding on the complainant Bolton College, which claims as residuary legatee under the will of Wade H. Bolton. Complainant insists that the moment Wade H. Bolton died his equitable interest in the eighty-nine acres the shortage vested in Bolton College and this interest could not be divested out of or diverted

from Bolton College unless Bolton College was a party to the litigation; it being further insisted that the devisee could make any defense that the executor might have made. It is also insisted that the complainant had the right to contest any judgment rendered against the personal representative.

Complainant relies upon the following authorities in support of the last proposition: Bloom v. Cate, 7 Lea, 471; Charles v. Spears, 9 Lea, 725; Chandler v. Whiteoak, etc., 131 Tenn., 47.

The view, however, we take of this case is as follows: Wade H. Bolton sold to Josephus Bledsoe the 316 acres. Bledsoe only paid for 237, and had a decree correcting the purchase so as to show that he only received 237 acres, but in fact he held title from Bolton for the 316 acres. It appears that on Feb. 3, 1896, Lucassia J. Carnes and J. C. Bledsoe, only surviving children and heirs at law of J. Bledsoe, deceased; conveyed 237 acres to Thomas T. Fleming by warranty deed, and it was the same 237 acres described in the survey made by John Brown, the surveyor, who testified in behalf of J. Bledsoe, complainant in the cause of J. Bledsoe v. E. M. Apperson, Extr., Wade H. Bolton. Therefore, we hold that the seventy-nine acres, some times called eighty-nine acres and known in the record as the "lost land," was not conveyed by the heirs at law of Josephus Bledsoe in the deed to Thomas T. Fleming. It appears that the grantors in the deed to Fleming were residents of the State of Texas, and acknowledged the same before a Notary Public of Comanche county, Texas. Therefore, we are of the opinion that the title to the strip of land in controversy was in the heirs at law of Josephus Bledsoe; to-wit, Lucassia J. Carnes and J. C. Bledsoe, or their heirs at law, at the time the complainant filed the bill in the instant case. Both Lucassia J. Carnes and J. C. Bledsoe were made party defendants, due publication was had for them and their unknown heirs if they were dead. Pro confesso was taken against the unknown heirs of J. C. Bledsoe and against Lucassia J. Carnes and J. C. Bledsoe. We are of the opinion that Jones and Wellborn in cutting the timber on the land in controversy were mere trespassers, and the complainant and the Bledsoe heirs have received their title from a common source. In ejectment suits plaintiff must deraign title from the State by a grant or from a common source, or he must prove such long possession as that the Court will presume that the land was granted to him or his predecessor in title, or that his possession was under a color of title perfected by the statute of limitations. Swinson v. Scott, 111 Tenn., 141; Hubbard v. Godfrey, 100 Tenn., 150; Wilcox v. Blackwell, 99 Tenn., 352; Clay v. Sloan, 104 Tenn., 401.

There is no plea of the statute of limitations by the heirs at law of J. C. Bledsoe. Laches is not available as a defense to an

action to remove a cloud on the title except where the plaintiff is out of possession and "out of possession" does not mean a mere failure of the owner to be in actual possession of wild or unoccupied land. Coal & Lumber Co. v. Patton, 134 Tenn., 573. The true owner, in legal contemplation, is in constructive possession of his unoccupied land if no one else is holding adversely, and he does not have to maintain actual possession to assert his rights. Coal & Lumber Co. v. Patton, supra.

While it is true that the title to the land in controversy passed to Josephus Bledsoe by the deed from W. H. Bolton, yet Josephus Bledsoe by his act in filing his suit against Apperson as executor repudiates and renounces any interest that he might have had in the eighty-nine acres designated as the "lost land," and Bolton's estate therefore became the true owner, in legal contemplation, of the land now in dispute, and under the will of Wade H. Bolton complainant was entitled to this land. The true owner, in legal contemplation, is in constructive possession of his unoccupied land if there is no one else holding adversely. He does not have to maintain actual possession to assert his rights. Coal & Lumber Co. v. Patton, supra. We are therefore of the opinion that the plea of the statute of limitations is not available to the defendants.

As to the testimony which the Chancellor excluded on behalf of the defendants, we are of the opinion that this testimony was properly excluded. An attempt to show possession by the mere cutting of timber is not sufficient where adverse possession is relied upon to defeat the superior title. The evidence must be strong, clear and pointed. Coal & Iron Co. v. Coppinger, 95 Tenn., 530.

These witnesses offered by the defendants, Gotten and the defendant R. M. Wellborn and his brother-in-law, Luther Jones son of defendant, Russell Jones, relate that certain timber was cut on this land back in '92 and '93. They show also that there were other trespassers upon this land cutting timber, but we think none of these mere trespassers would create the running of the statute of limitations, and we are of the opinion that the Chancellor was not in error in excluding this testimony.

It is insisted next that the Chancellor was in error in decreeing a money decree representing the value of the timber cut from the land in controversy other than against defendant Herman J. Wellborn as administrator of R. M. Wellborn, deceased, and the court should not have rendered a money decree as representing the value of the timber cut from the land against Oma Wellborn and L. F. Jones as the only children and representatives of the personal estate of Russell Jones, deceased. We are of the opinion that the Chancellor was not in error in rendering a judgment for the value of the timber against Herman J. Wellborn as administrator of R. M.

Wellborn, deceased. We are of the opinion, however, that no decree should have been rendered against Oma Wellborn and L. F. Jones as the only children and representatives of the personal estate of Russell Jones, deceased. The evidence shows that R. M. Wellborn, deceased, got the benefit of the timber that was cut. In the execution from the Supreme Court in the case of D. E. Young v. Wellborn, Wellborn recovered a judgment for the timber that Young had cut on the land in controversy, and which timber Young replevied from Wellborn, and which timber Young sold and not being able to return the timber when he was cast in the suit, or to restore the timber according to the decree of the court, a personal decree was rendered against Young and his sureties on replevin in favor of Wellborn. This judgment that Wellborn collected from Young and his sureties represents the value of the timber that had been cut from the land in controversy.

Learned counsel for the complainant insists that Jones' estate should be liable, for he aided, abetted and cooperated with Wellborn in cutting this timber. Jones had cut timber off this land, but it was many years before the complainant instituted the present suit. Mr. Jones filed a plea of the statute of limitations of six years for any claim made to him for timber cut. At the time of filing of complainant's bill the defendant Russell Jones was a very old man, far beyond his four-score years, and it is evident that he had taken no active part in the cutting of the timber for six years prior to the filing of complainant's bill. Wellborn was a son-in-law, and while Jones approved of what Wellborn did in the way of cutting timber it is not shown that Jones benefited financially from the cutting of any timber on the land in controversy during the six years prior to filing of complainant's bill. Defendant's fourth assignment of error is sustained. All the other assignments are overruled.

Complainant's assignment as to the testimony excluded is sustained, and we have considered this testimony in reaching our conclusion. We find no error in the decree of the Chancellor except in rendering a decree against Russell Jones estate, and with this modification the decree of the Chancellor is affirmed. The complainant will recover of the defendant, Herman Wellborn administrator, and his surety on appeal bond all the costs of the cause, for which execution will issue, including the cost of this appeal. A decree will also be entered in favor of complainant against Herman Wellborn, administrator of R. M. Wellborn's estate, for the amount of the decree in the lower court with interest thereon from the date of its rendition, for which execution will likewise issue.

Senter and Thompson, JJ., concur.