PATTERSON *et al. v.* ROBERTSON *et al.*

(*Jackson*, April Term, 1937.)

Opinion filed June 10, 1937.

H. H. Elder and M. R. Harwood, both of Trenton, for plaintiffs in error.

V. H. Holmes and R. P. Adams, both of Trenton, for defendants in error.

Mr. Chief Justice Green delivered the opinion of the Court.

Ejectment to recover certain lands in Gibson county. There was a directed verdict and judgment for the plaintiff in the circuit court. The Court of Appeals reversed this judgment and remanded the case for a new trial.

Defendant C. A. Patterson and defendant Georgia Patterson each owned a tract of land in Gibson county. They executed a joint trust deed conveying said tracts to secure a joint note executed by them. There was default in payment of the note and a sale of the lands was had under the trust deed at which the plaintiff below became the purchaser. Possession of the lands was withheld by defendants, and the plaintiff brought this suit.

The Court of Appeals reversed the judgment of the trial court upon two grounds:

First. Because the judgment was premature, that is, the case was not properly at issue.

Second. Because, in the opinion of the Court of Appeals, the trial judge improperly excluded certain evidence, which, had it been admitted, would have taken the case to the jury.

■ We think the Court of Appeals was clearly right upon its first proposition.

The summons in this case issued against C. A. Patterson and Georgia Patterson on Monday, July 29, 1935, returnable to a term of the circuit court beginning the first Monday in August, 1935—August 5, 1935. A copy of the declaration seems to have gone out with the summons. The officer's return on the summons was the following:

"Received this summons the same day issued and executed the same as to Mrs. Georgia Patterson by reading the summons to her and leaving with her a copy of the declaration on Wednesday, July 31, 1935. I undertook to execute as to C. A. Patterson, and went to his home on Tuesday, July 30, 1935, and again twice on Wednesday, July 31, 1935, being unable to find C. A. Patterson and having information to the effect that he was evading service of process, late in the afternoon of July 31, 1935, when for the third time, I was unable to find him at home and unable to learn his whereabouts, I left a copy of the summons at his home with his wife. This July 31, 1935. Will V. Sherrod, D. S."

An alias summons against C. A. Patterson issued August 8, 1935, returnable to the term of the circuit court beginning the first Monday in December, 1935. This summons was returned executed August 10, 1935.

No copy of the declaration was ever left with defendant C. A. Patterson. Although this point was made in various ways by both defendants, such objections were overruled, and they were put to trial on the merits of the case at the December, 1935, term of the circuit court, to-wit, on December 17, 1935.

Code sections regulating practice in ejectment suits at law are as follows:

9118. "Any person having a valid subsisting legal interest in real property, and a right to the immediate possession thereof, may recover the same by an action of ejectment."

9119. "The action is commenced by summons and declaration, in which the name of the real claimant is used as plaintiff, and the proper name of the defendant is inserted."

9122. "A copy of the declaration shall be left with the defendant at the time the summons is served upon him."

Referring to chapter 11, section 2, of the Act of 1801, which section 9122 of the Code follows, this court said:

"Before this statute no writ issued in .ejectment, but the declaration was the only process, and its delivery to the tenant in possession being the only warning which he received of the proceedings of the claimant, the courts were careful that a proper delivery should be made, and that the nature and contents of the declaration be explained at the time to the party to whom it was delivered. This delivery and explanation are termed the service of the declaration. Adams on Ejectment, 209.

"The act of assembly before referred to prescribes, that, in addition to the service of the writ, it shall be the duty of the sheriff 'to serve the declaration in ejectment on the tenant in possession as heretofore.' This service of the declaration then is now as indispensable as it was before the passage of the act requiring the issuance of a writ, otherwise the party has not due notice to appear

and defend." *Cravins* v. *Armour's Lessee,* 14 Tenn. (6 Yerg.), 467.

And again:

"It does not appear that any copy of the declaration was 'left with the defendant.' This is imperative by sec. 3233 of the Code. The suit is commenced by summons and declaration (sec. 3230); and it was held in *Cravins* v. *Armour,* that it must appear from the sheriff's return upon the process in an action of ejectment that he served (left with the defendant) a copy of the declaration, in order to bring the defendant into court. 6 Yerg., 467. . . . That is substantially this case, and the reasons for the rule apply as well now as before the change made in the mode of bringing suit in ejectment by the act of 1852." *Collins* v. *Legg,* 69 Tenn. (1 Lea), 120.

■ Defendant C. A. Patterson had not therefore been brought into court in this action of ejectment at the December, 1935, term. No judgment could properly have been rendered against him. Nor without a dismissal as to him, could a judgment properly have been rendered against his co-defendant, Georgia Patterson.

"If there are more defendants than one, and the writ is executed upon some and not upon others, the plaintiff cannot proceed with his suit against those that are found; he cannot file his declaration, nor take any judgment by default, or other step. He must wait until process is served on the other defendants, or he may dismiss his suit as to them, and then he may proceed." Caruther's History of a Lawsuit (3 Ed.), p. 96.

■ It is suggested that C. A. Patterson entered his appearance in this suit at the August, 1935, term. At the August, 1935, term the plaintiff applied for an injunction

against the defendants to restrain them from cutting timber, etc. A minute order of August 14, 1935, recites "This day came the parties by their attorneys and the plaintiff having heretofore in open court given notice of its intention to apply for an injunction restraining, etc., . . . it is considered by the court that the defendants and each of them should be and they are hereby enjoined," etc.

It will be noted that the recital is "came the parties by their attorneys." The plaintiff and the defendant Georgia Patterson might aptly have been described as "the parties." There is accordingly no showing that defendant C. A. Patterson made any appearance at this time.

■ The evidence which the Court of Appeals thought improperly excluded and which, if admitted, would have taken the case to the jury, was substantially this: Defendants undertook to testify that the note securing the trust deed under which plaintiff claimed was without consideration. That the note and the trust deed were placed in the hands of the Home Exchange Bank of Rutherford, at the suggestion of the cashier of that bank, their friend, by way of covering up their property and protecting it from creditors.

It seems that the Home Exchange Bank pledged defendants' note to the Reconstruction Finance Corporation and the latter, the note being in default, had the land conveyed to secure the note sold under the trust deed. At the sale the plaintiff, as receiver of the Home Exchange Bank, bid in the land and brought this suit.

The substance of defendants' testimony was that they owed the Home Exchange Bank nothing, that the execution of the note and the trust deed was resorted to merely

to cover up the land, and they claimed that they were accordingly entitled to hold the land.

In other words, the defendants did not undertake to challenge the legal title of the plaintiff. They undertook to set up an equitable title to the property in themselves. The trial court properly ruled that such an effort could not be countenanced in an ejectment suit at' law. This is so well settled by decisions of this court that it is only necessary to refer to certain earlier cases.

In *Langford* v. *Love*, 35 Tenn. (3 Sneed), 308, the court said:

"The action of ejectment is strictly a legal remedy. It looks only to legal title. It cannot be maintained unless the plaintiff has the legal estate in the premises, and an equitable title cannot be set up in this action against the legal title. The defendant must resort to a court of equity, to avail himself of his equitable title."

In *Campbell* v. *Campbell*, 40 Tenn. (3 Head), 325, 326, the court said:

"In an action of ejectment, in a Court of Law, the legal title, only, can be looked to; and, in general, the plaintiff's recovery cannot be resisted on the ground of an outstanding equitable title in a third person, or even in the defendant."

The case before us falls directly within the authority of *Furguson* v. *Coleman*, 52 Tenn. (5 Heisk.), 378. In that case the plaintiff sued in ejectment at law to recover a tract of land which he had purchased at a sale under a trust deed. The defendant, the former owner of the land, insisted that the deed made by him to the trustee was procured by fraud and conveyed no legal title. After a considerable discussion of the authorities, the court said:

". . . that the act of ejectment is purely a legal action; that where, as in this case, it appears from the evidence that the deed was duly executed, the maker of the deed, when sued in ejectment, is estopped to deny its execution; and that, if he relies upon equitable circumstances to avoid his own act, he must go into a Court of Equity, where questions of fraud can be more correctly determined than in a Court at law."

An effort is made to distinguish *Furguson* v. *Coleman* from the present case upon the idea that the plaintiff in the former case was an innocent purchaser. That is a misapprehension. The statement of the case shows that the plaintiff was a member of the partnership for whose benefit the trust deed was made. He was no more therefore an innocent purchaser than is the receiver of the Home Exchange Bank herein.

The foregoing decisions are referred to and approved by this court in the more recent case of *Hubbard* v. *Godfrey*, 100 Tenn., 150, 47 S. W., 81, where the nature of the action of ejectment in Tennessee is fully discussed. In accord is *King* v. *Coleman*, 98 Tenn., 561, 40 S. W., 1082. As pointed out in *Hubbard* v. *Godfrey*, ejectment in this state differs from ejectment at common law and under statutes of other states and authorities from other jurisdictions are not controlling.

The defendants rely on certain language of Judge Turney in the case of *Genthner* v. *Fagan*, 85 Tenn., 491, 3 S. W., 351, 352. The learned judge there said, although by way of *dictum*, "If an action of ejectment is brought, and in the progress of the trial a forged—a fraudulent—deed is offered, with certificate regular in form, good on its face, must the party against whom it is offered stop in the midst of trial, and file his bill to set the deed aside,

or may he show the fraud in its execution at the instant? The latter has been the practice, and was pursued in *Cousins* v. *Stevenson*, decided by this court in 1875.''

There is nothing in this expression contrary to the decisions to which we have referred. Counsel fail to note the care with which the learned Chief Justice picked his language. His intimation was that ''fraud in its execution'' might be shown of the deed relied on in an ejectment suit. The distinction between fraud in execution and failure of consideration or fraud in procurement or inducement is taken in *Furguson* v. *Coleman*, *supra*, referring to cited authorities, as follows:

''The learned annotators proceed to show that the misreading or mis-expounding of the deed, the drunkenness or imbecility of the party making it, the fact that it was extorted by duress, or that the maker was an infant or *feme covert*, or that the deed was never duly delivered, or was delivered merely as an escrow, may be inquired into in a Court of Law, for the purpose of showing 'fraud in the execution' of the deed; but that where the due and proper execution of the instrument is established, then, if the bargainor seeks to avoid it, he must resort to a Court of Equity.''

It is not contended that there was any fraud in the execution of this deed. The defendants rely on lack of consideration and fraudulent intent.

The judgment of the Court of Appeals remanding the case for a new trial will be affirmed, but further proceedings will be in accordance with this opinion. The costs of this court will be divided between the plaintiff and the defendants and other costs will remain as adjudged by the Court of Appeals.